[No. S174475. Feb. 24, 2011.]

SONIC-CALABASAS A, INC., Plaintiff and Appellant, v.
FRANK MORENO, Defendant and Respondent.

660

Fine, Boggs & Perkins, David J. Reese and John P. Boggs for Plaintiff and Appellant.

Locker Folberg, Rachel Folberg and Miles E. Locker for Defendant and Respondent.

McGuinn, Hillsman & Palefsky, Cliff Palefsky, Keith Ehrman; Law Office of Daniel U. Smith and Valerie T. McGinty for California Employment Lawyers Association as Amicus Curiae on behalf of Defendant and Respondent.

Hina B. Shah; Cynthia Rice; Jose Tello; Miye Goishi; and Silas Shawver for Asian Law Caucus, Asian Pacific American Legal Center, Bet Tzedek Legal Services, California Rural Legal Assistance, Inc., Centro Legal de La Raza, Garment Worker Center, Hastings Civil Justice Clinic, Katharine & George Alexander Community Law Center, La Raza Centro Legal, Lawyers' Committee for Civil Rights of· the San Francisco Bay Area, Legal Aid Foundation of Los Angeles, Legal Aid Society-Employment Law Center, Maintenance Cooperation Trust Fund, National Employment Law Project, Neighborhood Legal Services of Los Angeles County, Wage Justice Center, Women's Employment Rights Clinic of Golden Gate University School of Law and Worksafe Law Center as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—Under Labor Code section 98 et seq., an employee with a claim for unpaid wages has a right to seek an informal hearing in front of the

Labor Commissioner, a so-called "Berman" hearing. If the employee obtains an award at the Berman hearing, the employer may request de novo review of the award in the superior court, which the statute calls an "appeal." As explained at greater length below, the statutory regime of which the Berman hearing is part contains a number of provisions designed to assist employees during this process and to deter frivolous employer defenses. These provisions include the Labor Commissioner's representation in the superior court of employees unable to afford counsel, the requirement that the employer post an undertaking in the amount of the award, and a one-way attorney fee provision that requires an employer that is unsuccessful in the appeal to pay the employee's attorney fees.

In this case, we must decide whether a provision in an arbitration agreement that the employee enters as a condition of employment requiring waiver of the option of a Berman hearing is contrary to public policy and unconscionable. We conclude that it is, and therefore reverse the Court of Appeal's contrary judgment. We nonetheless conclude that arbitration agreements may be enforced after a Berman hearing has taken place, i.e., the appeal from such a hearing may be made, pursuant to a valid arbitration agreement, in front of an arbitrator rather than in court.

Furthermore, we must decide whether a state law rule that a Berman waiver in an arbitration agreement is unconscionable and contrary to public policy is preempted by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). In arguing this issue, the parties particularly focus on a recent United States Supreme Court case, *Preston v. Ferrer* (2008) 552 U.S. 346 [169 L.Ed.2d 917, 128 S.Ct. 978] (*Preston*), holding that a provision in this state's Talent Agencies Act vesting original jurisdiction of all disputes under that statute with the Labor Commissioner was preempted by the FAA. We conclude, as did the Court of Appeal below, that *Preston* is distinguishable and that our holding is not preempted by the FAA.

## I. FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Frank Moreno is a former employee of Sonic-Calabasas A, Inc. (Sonic), which owns and operates an automobile dealership. As a condition of his employment with Sonic, Moreno signed a document entitled "Applicant's Statement & Agreement." The agreement set forth a number of conditions of employment, including consent to drug testing and permission to contact former employers, as well as a provision making the employment at will. Critically for our case, the agreement contained a paragraph governing dispute resolution. The agreement required both parties to submit their employment disputes to "binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration

Act (Cal. Code Civ. Proc. sec. 1280 et seq. . . . .)." The agreement applied to "all disputes that may arise out of the employment context . . . that either [party] may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum[,] . . . whether based on tort, contract, statutory, or equitable law, or otherwise." The agreement specified that it did not apply to claims brought under the National Labor Relations Act (29 U.S.C. § 151 et seq.) or the California Workers' Compensation Act, or to claims before the Employment Development Department. Furthermore, the agreement provided that the employee was not prevented from "filing and pursuing administrative proceedings only before the California Department of Fair Employment and Housing or the U.S. Equal Opportunity Commission."

At some point, Moreno left his position with Sonic. In December 2006, Moreno filed an administrative wage claim with the Labor Commissioner for unpaid vacation pay pursuant to Labor Code section 98 et seq.[1] Moreno alleged that he was entitled to unpaid "[v]acation wages for 63 days earned 7/15/02 to 7/15/06 at the rate of $441.29 per day." The filing of this claim is the first step toward obtaining a Berman hearing.

In February 2007, Sonic petitioned the superior court to compel arbitration of the wage claim and dismiss the pending administrative action. (Code Civ. Proc., § 1281.2.) Sonic argued Moreno waived his right to a Berman hearing in the arbitration agreement.

The Labor Commissioner intervened below on Moreno's behalf (§ 98.5), and Moreno adopted the Labor Commissioner's arguments. The Labor Commissioner argued that the arbitration agreement, properly construed, did not preclude Moreno from filing an administrative wage claim under section 98 et seq. The Labor Commissioner argued that resort to a Berman hearing was compatible with the arbitration agreement, because the hearing could be followed by arbitration in lieu of a de novo appeal to the superior court that is provided in section 98.2, subdivision (a). The Labor Commissioner contended that a contrary interpretation of the arbitration agreement to waive a Berman hearing would violate public policy, relying on our decision regarding mandatory employment arbitration agreements in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).

The superior court denied the petition to compel arbitration as premature. Citing *Armendariz*, the superior court stated that, as a matter of "basic public policy . . . until there has been the preliminary non-binding hearing and

---

[1] All statutory references are to this code unless otherwise indicated.

decision by the Labor Commissioner, the arbitration provisions of the employment contract are unenforceable, and any petition to compel arbitration is premature and must be denied."

Sonic appealed from the order of denial. (Code Civ. Proc., § 1294, subd. (a).) The Labor Commissioner did not participate in the appeal, nor in proceedings before this court. During the briefing period, the United States Supreme Court decided *Preston*, which held that the Labor Commissioner's original and exclusive jurisdiction under the Talent Agencies Act (Lab. Code, § 1700 et seq.) was preempted when the parties entered into an arbitration agreement governed by the FAA. (*Preston, supra*, 552 U.S. 346.)

The Court of Appeal concluded at the threshold that *Preston* was not dispositive of the appeal, reasoning that *Preston* applied to cases in which a party was challenging the validity of a contract as a whole and seeking to have that challenge adjudicated by an administrative agency; it did not apply to cases in which the party was challenging the arbitration clause itself as unconscionable. The Court of Appeal further concluded that the arbitration agreement, correctly interpreted, constituted a waiver of a Berman hearing. By its terms, the agreement precluded Moreno from pursuing any judicial "or other government dispute resolution forum," subject to certain enumerated exceptions. "Given that neither the Division of Labor Standards Enforcement nor the Labor Commissioner was listed among the stated exceptions, we conclude, as a matter of law, that Moreno was barred from pursuing an administrative wage claim under section 98 et seq."

The Court of Appeal then concluded, for reasons explained below, that a Berman waiver was not contrary to public policy. Moreno petitioned for review, contending the Court of Appeal decided this question incorrectly. Sonic, in its answer to the petition, contended the Court of Appeal was correct, and renewed its argument that a holding invalidating a Berman waiver would be preempted by the FAA, as construed in *Preston*. We granted review to decide these questions.

## II. DISCUSSION

### A. *The Berman Hearing and Posthearing Procedures*

As we have explained: "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant

to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371) and is commonly known as the 'Berman' hearing procedure after the name of its sponsor." (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704] (*Cuadra*), disapproved on other grounds in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

■ Once an employee files a complaint with the Labor Commissioner for nonpayment of wages, section 98, subdivision (a) " 'provides for three alternatives: the commissioner may either accept the matter and conduct an administrative hearing [citation], prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship [citation], or take no further action on the complaint. [Citation.]' " (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1115 [56 Cal.Rptr.3d 880, 155 P.3d 284].) "If the commissioner decides to accept the matter and conduct an administrative hearing, he or she must hold the hearing within 90 days." (*Ibid.*) Moreover, prior to holding a Berman hearing or pursuing a civil action, the Labor Commissioner's staff may attempt to settle claims either informally or through a conference between the parties. (Dept. of Industrial Relations, Div. of Labor Stds. Enforcement (DLSE), Policies and Procedures for Wage Claim Processing (2001 rev.) pp. 2–3.)

■ A Berman hearing is conducted by a deputy commissioner, who has the authority to issue subpoenas. (Cal. Code Regs., tit. 8, §§ 13502, 13506.) "The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. In brief, in a Berman proceeding the commissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no discovery process; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on request. (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.)" (*Cuadra, supra,* 17 Cal.4th at pp. 858–859, fn. omitted.) The hearings are not governed by the technical rules of evidence, and any relevant evidence is admitted "if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (Cal. Code Regs., tit. 8, § 13502.) The hearing officer is authorized to assist the parties in cross-examining witnesses and to explain issues and terms not understood by the parties. (DLSE, Policies and Procedures for Wage Claim Processing, *supra,* at p. 4.) The parties have a right to have a translator present. (*Ibid.*; see § 105, subd. (b) [". . . Labor Commissioner shall provide that an interpreter be present at all hearings and interviews where appropriate."].)

■ Once judgment is entered in the Berman hearing, enforcement of the judgment is to be a court priority. (§ 98.2, subd. (e).) The Labor Commissioner is charged with the responsibility of enforcing the judgment and "shall make every reasonable effort to ensure that judgments are satisfied, including taking all appropriate legal action and requiring the employer to deposit a bond as provided in Section 240." (*Id.*, subd. (i).)

■ Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately, and enforceable as a judgment in a civil action. (§ 98.2.) If an employer appeals the Labor Commissioner's award, "[a]s a condition to filing an appeal pursuant to this section, an employer shall first post an undertaking with the reviewing court in the amount of the order, decision, or award. The undertaking shall consist of an appeal bond issued by a licensed surety or a cash deposit with the court in the amount of the order, decision, or award." (§ 98.2, subd. (b).) The purpose of this requirement is to discourage employers from filing frivolous appeals and from hiding assets in order to avoid enforcement of the judgment. (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 2772 (2009–2010 Reg. Sess.) as amended Apr. 8, 2010, p. 4.)

■ Under section 98.2, subdivision (c), "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero." This provision thereby establishes a one-way fee-shifting scheme, whereby unsuccessful appellants pay attorney fees while successful appellants may not obtain such fees. (See *Dawson v. Westerly Investigations, Inc.* (1988) 204 Cal.App.3d Supp. 20, 24–25 [251 Cal.Rptr. 633] [construing the predecessor statute, § 98.2, subd. (b)].)[2] This is in contrast to section 218.5, which

---

[2] That section 98.2, subdivision (c) is especially protective of employees is evident from the last sentence of that subdivision and the legislative history behind it. Before the statute was amended in 2003, it did not explicitly provide that an employee would be considered successful on appeal if the court awards an amount greater than zero (cf. Stats. 2002, ch. 784, § 522), but Court of Appeal decisions construed the statute in that manner. (*Cardenas v. Mission Industries* (1991) 226 Cal.App.3d 952, 960 [277 Cal.Rptr. 247]; *Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1 [200 Cal.Rptr. 418].) We disapproved of those cases in *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 370–371 [127 Cal.Rptr.2d 516, 58 P.3d 367], concluding that an employee would be considered unsuccessful on appeal, and subject to section 98.2, subdivision (c)'s fee-shifting provision, if its award on appeal was less than the Labor Commissioner's award. The Legislature then amended the statute in 2003 specifically to overrule *Smith v. Rae-Venter* and to restore the law to be in accord with the holdings in *Cardenas* and *Triad*. (See Legis. Counsel's Dig., Assem. Bill No. 223 (2003–2004 Reg.

provides that in civil actions for nonpayment of wages initiated in the superior court, the "prevailing party" may obtain attorney fees.

■ Furthermore, the Labor Commissioner "may" upon request represent a claimant "financially unable to afford counsel" in the de novo proceeding and "shall" represent the claimant if he or she is attempting to uphold the Labor Commissioner's award and is not objecting to the Commissioner's final order. (§ 98.4.) Such claimants represented by the Labor Commissioner may still collect attorney fees pursuant to section 98.2, although such claimants have not, strictly speaking, incurred attorneys fees, because construction of the statute in this manner is consistent with the statute's goals of discouraging unmeritorious appeals of wage claims. (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 376 [121 Cal.Rptr.2d 571, 48 P.3d 1128].)

■ In sum, when employees have a wage dispute with an employer, they have a right to seek resolution of that dispute through the Labor Commissioner, either through the commissioner's settlement efforts, through an informal Berman hearing, or through the commissioner's direct prosecution of the action. When employees prevail at a Berman hearing, they will enjoy the following benefits: (1) the award will be enforceable if not appealed; (2) the Labor Commissioner is statutorily mandated to expend best efforts in enforcing the award, which is also established as a court priority; (3) if the employer appeals, it is required to post a bond equal to the amount of the award so as to protect against frivolous appeals and evading the judgment; (4) a one-way attorney fee provision will ensure that fees will be imposed on employers who unsuccessfully appeal but not on employees who unsuccessfully defend their Berman hearing award, or on employees who appeal and are awarded an amount greater than zero in the superior court; and (5) the Labor Commissioner is statutorily mandated to represent in an employer's appeal claimants unable to afford an attorney if the claimant does not contest the Labor Commissioner's award.

### B. *Berman Hearings and Arbitration Are Compatible*

We note that the Labor Commissioner, who intervened in this case at the trial court level, did not contend that arbitration and Berman hearings are incompatible, or that the present arbitration agreement could not be enforced, but only that "the arbitration agreement should be construed as providing that respondent is entitled to initially pursue his remedy before the Commissioner and is only required to proceed to arbitration if and when a de novo appeal is

Sess.).) The legislative history shows that the Legislature was concerned that the *Smith v. Rae-Venter* rule would discourage meritorious appeals by employees and even discourage the use of Berman hearings altogether. (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 223 (2003–2004 Reg. Sess.) as introduced Jan. 29, 2003, p. 3.)

filed." The trial court's order did not irrevocably deny the petition to compel arbitration but merely ruled that it could not be granted until a Berman hearing had taken place. This is also Moreno's position before us. Because, as will appear, the answer to the question whether a Berman hearing and arbitration are compatible will shape our answer to the questions of whether a Berman waiver is contrary to public policy and unconscionable, we address the former question first.

We construe the relevant statutes to permit binding arbitration after a Berman hearing. We recently considered an analogous statutory scheme in *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557 [87 Cal.Rptr.3d 700, 198 P.3d 1109] (*Schatz*). In that case, a client in a fee dispute with his attorney first resorted to the Mandatory Fee Arbitration Act (MFAA), which provides a nonbinding method of arbitrating attorney-client fee disputes governed by rules established by the State Bar. (Bus. & Prof. Code, § 6200.) When the arbitrators decided in the attorney's favor, the client, Schatz, filed a complaint in superior court for a trial de novo, notwithstanding the fact that attorney and client had entered into an agreement for binding arbitration. Schatz, in resisting a petition to compel arbitration, argued that by its literal terms the MFAA, in Business and Professions Code section 6204, gives either party to an MFAA arbitration the right to a "trial" after the arbitration if a request for a trial is filed within 30 days.

In answering the question of whether Schatz was bound by the arbitration agreement, we framed the analysis in terms of whether the statutory language in the MFAA was designed to impliedly repeal the California Arbitration Act (CAA), which contemplated that binding arbitration agreements be enforced. We noted that all presumptions are against implied repeal, and that, absent an express declaration of legislative intent, courts will find an implied repeal only when there is no rational basis for harmonizing the two potentially conflicting statutes, and the statutes are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. (*Schatz, supra*, 45 Cal.4th at p. 573.)

We concluded in *Schatz* that there was no such implied repeal. " 'Nothing in the MFAA makes [a binding] arbitration agreement . . . unenforceable. The MFAA and the CAA create two very different types of arbitration. . . . Both may be given effect. Clients may, if they wish, request and obtain nonbinding arbitration under the MFAA. That arbitration may, and often will, resolve the dispute. But if the client does not request nonbinding arbitration, or if it is held but does not resolve the dispute, then the MFAA has played its role, and the matter would continue without it. Either party may then pursue judicial action unless the parties had agreed to binding arbitration. In that event, the CAA would apply, and the dispute would go to binding arbitration. This

conclusion is consistent with the statutory language of both the MFAA and the CAA and the strong public policy in favor of binding arbitration as a means of resolving disputes.' " (*Schatz, supra,* 45 Cal.4th at p. 574.)

■ As in *Schatz,* we do not construe the Berman hearing procedures as impliedly repealing the CAA's requirement that arbitration agreements be enforced. Thus, as in *Schatz,* notwithstanding the fact that Berman's nonbinding dispute resolution procedure contemplates a de novo appeal to the superior court (§ 98.2, subd. (a)), we interpret that language to provide that " '[e]ither party may . . . pursue judicial action unless the parties had agreed to binding arbitration. In that event, the CAA would apply, and the dispute would go to binding arbitration.' " (*Schatz, supra,* 45 Cal.4th at p. 574.)

Like the Labor Commissioner below, we see no reason why the statutory protections afforded employees following a Berman hearing cannot be made available in an arbitration proceeding. A party to a Berman hearing seeking a de novo appeal via arbitration pursuant to a prior agreement rather than through a judicial proceeding would initially file an appeal in superior court pursuant to section 98.2, subdivision (a), together with a petition to compel arbitration. The superior court would determine whether the appeal is timely and whether it comports with all the statutory requirements, such as the undertaking requirement in subdivision (b). If so, and if the petition to compel arbitration is unopposed, or found to be meritorious, the trial court will grant the petition. The Labor Commissioner, pursuant to section 98.4, may then represent an eligible wage claimant in the arbitration proceeding. The one-way fee-shifting provisions of section 98.2, subdivision (c) will be enforced initially by the arbitrator, with such judicial review as may be appropriate.

The above framework does not purport to anticipate every problem that may arise from dovetailing the Berman hearing statutes and the CAA. But the Labor Commissioner's position below that the Berman hearing was merely preliminary to, rather than preemptive of, binding arbitration confirms our conclusion that the two statutory schemes are compatible and that having the Berman hearing precede arbitration is workable.

That a Berman hearing and an arbitration pursuant to the CAA are compatible does not, of course, answer the question whether an employer can require an employee to waive a Berman hearing and go directly to arbitration as a condition of employment. We turn now to the question.

### C. *Does the Waiver of a Berman Hearing Violate Public Policy and Is It Unconscionable?*

■ In determining whether a Berman waiver violates public policy, we first review the law related to mandatory employment arbitration agreements,

i.e., arbitration agreements that are conditions of new or continuing employment. In *Armendariz, supra,* 24 Cal.4th 83, we concluded that such agreements were enforceable, provided they did not contain features that were contrary to public policy or unconscionable. (*Id.* at p. 99.) We concluded that "arbitration agreements cannot be made to serve as a vehicle for the waiver of [unwaivable] statutory rights," such as rights under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). To ensure that such waiver did not occur, we held that arbitrations addressing such statutory rights would be subject to certain minimal requirements. As we later summarized these: "(1) the arbitration agreement may not limit the damages normally available under the statute (*Armendariz, supra,* 24 Cal.4th at p. 103); (2) there must be discovery 'sufficient to adequately arbitrate their statutory claim' (*id.* at p. 106); (3) there must be a written arbitration decision and judicial review ' "sufficient to ensure the arbitrators comply with the requirements of the statute" ' (*ibid.*); and (4) the employer must 'pay all types of costs that are unique to arbitration' (*id.* at p. 113)." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*).) We did not hold that the above requirements were the only conditions that public policy could place on arbitration agreements, and have since recognized other limitations. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 463 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*) [prohibition of class arbitration contrary to public policy in some cases].)

Here we must decide whether an employee in the context of an arbitration agreement can waive the right to a Berman hearing and posthearing protections. In concluding that such rights may be waived, the Court of Appeal first acknowledged, correctly, that the right to vacation pay was a vested right and therefore unwaivable under section 227.3.[3] (See *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780, 784 [183 Cal.Rptr. 846, 647 P.2d 122].) Having established the vested right to vacation pay, the court framed its inquiry as follows: "We must decide whether the absence of these statutory protections will significantly impair Moreno's ability to vindicate his wage rights in arbitration. According to *Gentry* . . . , '*Armendariz* makes clear that for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights.' (*Gentry, supra,* 42 Cal.4th at p. 463, fn. 7.)"

---

[3] Section 227.3 states in part: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination."

The court then reasoned that the Berman hearing and post-Berman protections would not significantly impair Moreno's ability to vindicate his right to vacation pay through arbitration. "Significantly, all of these statutory protections are only available if and when an employer appeals from an adverse administrative ruling. Obviously, it is impossible to determine whether Moreno will prevail at the administrative hearing. Accordingly, it is impossible to determine whether Moreno will lose any statutory protections if the Berman waiver is enforced. Unless enforcing the Berman waiver will pose significant obstacles to the vindication of Moreno's statutory wage rights, *Armendariz* does not require us to invalidate the waiver. At most, enforcing the Berman waiver will eliminate the possibility of receiving statutory protections that are contingent on an administrative ruling in Moreno's favor. We are not persuaded that the loss of what are merely contingent benefits can be equated with the significant obstacle to the vindication of statutory rights that *Armendariz* sought to address."

The Court of Appeal elaborated: "[T]he record contains no evidence that Moreno or any other wage claimant lacks the knowledge, skills, abilities, or resources to vindicate his or her statutory wage rights in an arbitral forum. Even assuming the arbitral process is more difficult to navigate than the Berman process, there is nothing in this record to indicate that enforcing a Berman waiver will significantly impair the claimant's ability to vindicate his or her statutory rights. In short, Moreno has failed to demonstrate either the inadequacy of the arbitral forum provided by his arbitration agreement or the existence of a factual basis to invalidate all Berman waivers as against public policy."

█ In the present case, however, the question is not whether, in a court's judgment, the absence of statutory protections afforded by the Berman hearing and the potential post-Berman protections would significantly impair Moreno's ability to vindicate his unwaivable right to vacation pay in arbitration. Rather, the question is whether the employee's statutory right to seek a Berman hearing, with all the possible protections that follow from it, is itself an unwaivable right that an employee cannot be compelled to relinquish as a condition of employment. We conclude that it is.

█ The question whether the waiver of a particular statutory protection is contrary to public policy essentially entails discerning legislative intent. Sometimes statutory rights are made expressly unwaivable. (See § 1194 [right to recover minimum wage notwithstanding any agreement]; Civ. Code, § 1751 [waiver of rights under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) unenforceable and void].) In other cases, whether a statute can be waived may be implied from the context and purpose of the statute. Thus, in

*Armendariz*, we deduced the unwaivability of FEHA rights to redress nondiscrimination from the fact that FEHA incorporated this state's strong public policy against various types of employment discrimination. (*Armendariz, supra*, 24 Cal.4th at pp. 100–101.)

██ There is no question that the lawful payment of wages owed is not merely an individual right but an important public policy goal. As one appellate court correctly summarized the matter: "Civil Code section 3513 provides, in pertinent part, that: '[a]nyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' [¶] The determination of whether a particular statute is for public or private benefit is for the court in each case (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 645, p. 586). The provisions of the Labor Code, particularly those directed toward the payment of wages to employees entitled to be paid, were established to protect the workers and hence have a public purpose. As was pointed out in *In re Trombley* (1948) 31 Cal.2d 801, 809 [193 P.2d 734]: '[i]t has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due.' (Also see *Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326–327 [19 Cal.Rptr. 492, 369 P.2d 20].)" (*Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 6 [272 Cal.Rptr. 134].)

Although the statutory protections that the Berman hearing and the posthearing procedures afford employees were added piecemeal over a number of years, their common purpose is evident: Given the dependence of the average worker on prompt payment of wages, the Legislature has devised the Berman hearing and posthearing process as a means of affording an employee with a meritorious wage claim certain advantages, chiefly designed to reduce the costs and risks of pursuing a wage claim, recognizing that such costs and risks could prevent a theoretical right from becoming a reality. These procedures, including the employer undertaking and the one-way fee provision, also deter employers from unjustifiably prolonging a wage dispute by filing an unmeritorious appeal. This statutory regime therefore furthers the important and long-recognized public purpose of ensuring that workers are paid wages owed. The public benefit of the Berman procedures, therefore, is not merely incidental to the legislation's primary purpose but in fact central to that purpose. Nor can there be any doubt that permitting employers to require employees, as a condition of employment, to waive their right to a Berman hearing would seriously undermine the efficacy of the Berman hearing statutes and hence thwart the public purpose behind the statutes.

Sonic argues in effect that even if a nonarbitration clause that required a Berman hearing waiver is contrary to public policy, an arbitration clause containing the same waiver would not be, because arbitration offers the same or similar advantages as does the Berman hearing process. We disagree. As the previous part of this opinion makes clear, the choice is not between a Berman hearing and arbitration, because a person subject to binding arbitration and eligible for a Berman hearing will still be subject to binding arbitration if the employer appeals the Berman hearing award. The choice is rather between arbitration that is or is not preceded by a Berman hearing. As discussed above, there are considerable advantages for employees to undergo the Berman hearing process before arbitration. First, the Labor Commissioner's staff is directed to settle claims either informally or through a conference between the parties. (DLSE, Policies and Procedures for Wage Claim Processing, *supra*, at pp. 2–3.) If no settlement is obtained, a Berman hearing is to be conducted in "an informal setting preserving the rights of the parties" (§ 98, subd. (a)), conducted, as explained above, without discovery or formal rules of evidence, and with the hearing officer's assistance in cross-examining witnesses and understanding terms and issues. It is thus structured so that an employee can avail himself or herself of the process without the need of counsel. An employee who is successful at a Berman hearing will have the resources of the Labor Commissioner behind him or her to ensure that the judgment is enforced. (§ 98.2, subd. (i).) If the employer appeals, then the employer must post an undertaking in the amount of the award to ensure enforcement of the judgment if the employee ultimately prevails. (§ 98.2, subd. (b).) An employee unable to afford counsel will be represented by the Labor Commissioner if the employer requests arbitration and the employee does not contest the commissioner's award. (§ 98.4.) Moreover, an employee in this circumstance will not be liable for the employer's attorney fees if the employer prevails on appeal. (§ 98.2, subd. (c).)

In contrast, arbitration, notwithstanding its advantages as a reasonably expeditious means of resolving disputes, still generally bears the hallmark of a formal legal proceeding in which representation by counsel is necessary or at least highly advantageous. The arbitration in question here, for example, is to be conducted by a "retired California Superior Court Judge" and "to the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure section 631.8." The arbitrator's award at either party's request will be reviewed by a second arbitrator who will "as far as practicable, proceed according to the law and procedures applicable to appellate review by the California Court of Appeal of a civil judgment

following court trial." A wage claimant undergoing arbitration will need the same kind of legal representation as if he or she were going to superior court.

Thus, an employee going directly to arbitration will lose a number of benefits and advantages. He or she will not benefit from the Labor Commissioner's settlement efforts and expertise. He or she must pay for his or her own attorney whether or not he or she is able to afford it—an attorney who may not have the expertise of the Labor Commissioner. Moreover, what matters to the employee is not a favorable arbitration award per se but the enforcement of that award, and an employee going directly to arbitration will have no special advantage obtaining such enforcement. Nor is there any guaranty that the employee will not be responsible for any successful employer's attorney fees, for under section 218.5, an employee who proceeds directly against an employer with a wage claim not preceded by a Berman hearing will be liable for such fees if the employer prevails on appeal.[4] In short, the Berman hearing process, even when followed by binding arbitration, provides on the whole substantially lower costs and risks to the employee, greater deterrence of frivolous employer claims, and greater assurance that awards will be collected, than does the binding arbitration process alone.[5]

Sonic argues that we can construe the arbitration agreement, as we did in *Armendariz*, to provide protections equivalent to those available during and after a Berman hearing. The argument is without merit. In *Armendariz*,

---

[4] At oral argument, Sonic's counsel argued that its arbitration in fact resembled a Berman hearing in its informality, and the arbitrator would or might incorporate Berman-like protections such as one-way fee shifting. Nothing in the arbitration agreement, nor anything else in the record before us, confirms these representations. It may be possible for an arbitration system to be designed so that it provides an employee all the advantages of the Berman hearing and posthearing protections. But there is no indication that the present arbitration system is so designed.

[5] Nor are we persuaded to the contrary by assertions about arbitration's greater expedition. Based on the various statutory deadlines, as well as memoranda by the Labor Commissioner and declarations by labor law attorneys, we concluded in 1998 that the time between filing a complaint with the Labor Commissioner and a Berman hearing date is usually four to six months. (*Cuadra, supra*, 17 Cal.4th at pp. 860–862 & fn. 7.) Sonic, in its petition to compel arbitration below, documented three cases in which the commencement of a Berman hearing took longer than this average, in one case slightly under four years, in two other cases slightly under one year. No doubt the time between the filing of an administrative complaint and commencement of a Berman hearing is subject to variation. Whether the delays represent a backlog in the Labor Commissioner's workload, or were generated by the parties themselves, or how these times compare to the completion of an arbitration, is not clear. It may be the case that once a dispute has arisen, some employees' assessment of the time it will take to conduct a Berman hearing, when compared to the time it will take to resolve a claim by going directly to arbitration, will weigh in favor of the latter course. That an employee may make this assessment does not alter the fact that he or she gains no advantage, and places himself or herself at a possible significant disadvantage, by agreeing to waive the option of a Berman hearing in advance as a condition of employment.

we recognized that in some cases, terms in an arbitration agreement that are unconscionable or contrary to public policy may be severed and the rest of the agreement enforced. (*Armendariz, supra*, 24 Cal.4th at pp. 123–124; see *Little, supra*, 29 Cal.4th at pp. 1075–1076.) We also construed an arbitration agreement that was silent about some matters, such as costs, so as to make it conform to public policy. (*Armendariz, supra*, at p. 113.) Here, Sonic does not ask us to sever an unlawful provision or to construe a provision in a manner that renders it lawful, but rather to, in effect, reform a statute. As reviewed above, the statutory protections pursuant to sections 98.2 and 98.4 are contingent on the Labor Commissioner's findings in a Berman hearing that an employee's claim is meritorious. For this court to order the Labor Commissioner or arbitrator to provide those protections when there has been no prior favorable determination in a Berman hearing is contrary to statute and beyond our authority.[6]

Contrary to Sonic's suggestion, and that of the dissent, the fact that the Berman hearing is merely an option for employees, who may also go directly to court (§ 218), does not alter the nonwaivability of the Berman hearing protections, for it is precisely that *option* which an employer may not foreclose in a predispute agreement. The purpose of the Berman hearing statutes is to empower wage claimants by giving them access to a Berman hearing with all of its advantages. Allowing an employee the freedom to choose whether to resort to a Berman hearing when a wage claim arises, after evaluating in light of the particular circumstances whether such a hearing is advantageous, is wholly consistent with the public policy behind the Berman hearing statutes. A requirement that the employee surrender the option of a Berman hearing as a condition of employment is not. As we recognized in *Armendariz*, our concern is with the impermissible waiver of certain rights and protections as a condition of employment before a dispute has arisen. (See *Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.)[7] We therefore find the argument that, because the Legislature intended an employee to have the option of a Berman hearing when a wage claim arises, the Legislature also

---

[6] This is not to say that *Armendariz* is irrelevant in the context of post-Berman-hearing arbitration. As Sonic appears to have conceded at oral argument, *Armendariz*'s procedural protections, and in particular its fee-shifting requirement, are applicable. A wage claimant who has undergone a Berman hearing cannot be compelled to bear arbitration forum costs he or she would not be required to pay if the employer appealed to the superior court. (See *Armendariz, supra*, 24 Cal.4th at p. 113.) A contrary rule that would subject a wage claimant to either the risk or the reality of being saddled with substantial arbitration costs that could either diminish or nullify a potential award or discourage employees from seeking such an award in the first place would be in fundamental conflict with the purpose of a Berman hearing to provide employees a low-cost and effective means of vindicating such claims.

[7] We thus do not decide whether it is contrary to public policy to knowingly and voluntarily waive the right to seek a Berman hearing as part of a freely negotiated, nonstandard contract, such as may exist between an employer and a highly compensated executive employee.

must have intended to permit employers to require employees to waive that option as a condition of employment, to be unpersuasive.

Sonic finds support for the Court of Appeal's holding in *Gentry*, in which we concluded that some class arbitration waivers are unlawful but declined to categorically declare invalid all such waivers. *Gentry* is readily distinguishable. Class arbitration is a judicially devised procedure. We acknowledged that class actions or arbitrations were not categorically necessary to vindicate statutory rights, and that under some circumstances, those rights could be adequately enforced by individual action. (*Gentry, supra*, 42 Cal.4th at pp. 462, 464.) We further recognized the well-established principle that " '[t]rial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action . . . .' " (*Id.* at pp. 463–464, quoting *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) In the present case, in contrast, the Berman hearing and posthearing procedures have been mandated by the Legislature to be available to all employees with wage complaints that fall within the scope of the statute. As discussed above, that mandate represents a legislative judgment about the special protections and procedural rights that should be afforded to persons with wage claims in order to ensure that such claims be fairly resolved. The judgment that such a waiver is contrary to public policy is not contingent upon the determination of a trial court, during a petition to compel arbitration, about whether and to what extent a particular wage claimant will benefit from the Berman hearing process. Indeed, as the Court of Appeal acknowledged, the trial court at that stage is in no position to determine such matters.

Moreover, notwithstanding the Court of Appeal's and Sonic's suggestions, Berman hearings and posthearing protections are by their own terms made available to all statutorily eligible wage earners, not merely low-wage workers. This legislative determination cannot be modified by a judicial determination that employees earning something more than a low wage do not really require these protections and therefore can be required to waive them as a condition of employment. Sonic suggests that the fact that Moreno had been earning over $100,000 at the time he left his employment means that he would not be in the class of persons unable to afford counsel and eligible for representation by the Labor Commissioner in the event of an appeal. But extending this suggestion into an argument that a Berman waiver as applied to Moreno is not contrary to public policy suffers from at least three flaws. First, as Moreno's counsel points out, there is nothing in the record regarding Moreno's present financial condition. Second, the determination of whether a claimant is unable to afford counsel is vested solely in the Labor Commissioner under section 98.4, and a superior court deciding a petition to compel arbitration is in no position to guess what the commissioner's determination will be. Third and most fundamentally, even if it could be determined that Moreno's financial condition was such that he would not be

represented by the Labor Commissioner, the Berman statutes provide, as explained, many advantages to all wage claimants, not only indigent ones. These include the informal hearing itself, the commissioner's settlement efforts, the bonding requirement ensuring that wage awards to employees actually be enforced, and the one-way fee-shifting provision discouraging frivolous employer appeals and encouraging the pursuit of meritorious claims without fear of financial penalty.[8] We therefore conclude the Berman waiver at issue here is contrary to public policy.[9]

Our conclusion is the same if we analyze the issue in terms of unconscionability.[10] One common formulation of unconscionability is that it refers to " 'an absence of meaningful choice on the part of one of the parties

---

[8] Sonic also cites in support *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276 [58 Cal.Rptr.3d 5]. In that case, a high-ranking executive sued his former employer for breach of contract and for nonpayment of statutory wages under section 200 et seq. The Court of Appeal, in upholding the employer's petition to compel arbitration, rejected the argument that the *Armendariz* requirements applied in that case, which it characterized as a "garden-variety" breach of contract action. (*Giuliano, supra*, at p. 1289.) The plaintiff in *Giuliano* did not seek a Berman hearing but filed an action directly in court. That case is therefore inapposite.

[9] The dissent goes to great lengths in its attempts to show that a Berman waiver is not contrary to public policy. Yet it does not contest in any concrete way that Berman hearings and posthearing protections provide important advantages to employees not present if the employee went directly to arbitration, or that permitting a Berman hearing waiver as a condition of employment would substantially undermine the legislative policy behind the Berman hearing statutes. It is true, as discussed above, that a given employee may choose to forgo a Berman hearing and go directly to arbitration, perhaps concluding, for example, that his or her strong case may be resolved more quickly. But whatever advantages arbitration without a Berman hearing may have for an employee will be realized if the employee is given a *choice*, once a wage dispute arises, of going directly to arbitration or going first to the Labor Commissioner. It is precisely this choice that the Berman statutes authorize and the predispute waiver at issue in this case, which the dissent would uphold, seeks to revoke. Moreover, the dissent's conjecture that employers who cannot insert Berman waivers into arbitration agreements will likely abandon arbitration of wage claims (dis. opn., *post*, at p. 714, fn. 8) is groundless speculation. The dissent also seeks to minimize the public importance of the Berman hearing legislation, notwithstanding venerable case law discussed above affirming that the collection of wages owed not only vindicates individual rights but fulfills an important public purpose. (See *Armendariz, supra*, 24 Cal.4th at pp. 100–101 [anti-employment-discrimination statutes unwaivable notwithstanding significant individual benefit to employees].) Nor does the dissent's lengthy discussion of the case law of the United States Supreme Court and this court (see dis. opn., *post*, at pp. 702–706)—case law that merely stands for the uncontroversial proposition that statutory claims are generally arbitrable—shed light on the present case. Nor is the dissent correct when it asserts that our public policy arguments are at odds with those of Moreno. Moreno argues vigorously that the Berman waiver, by forcing employees to forego the various statutory advantages discussed above and in great detail in his briefs, "limits the remedies that would otherwise be available to enforce employees' statutory rights [e.g., one-way fee-shifting and undertaking requirements], and . . . imposes costs exceeding those that the employee would normally incur [e.g., costs of counsel]." We agree.

[10] We requested supplemental briefing on the unconscionability issue, which was not argued in the courts below. Sonic contends that we should not address unconscionability, principally

together with contract terms which are unreasonably favorable to the other party.' " (*Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1170, and authorities cited therein.) As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' " (*Little, supra,* 29 Cal.4th at p. 1071.)

 "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided. One such form, as in *Armendariz,* is the arbitration agreement's lack of a ' "modicum of bilaterality," ' wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration. (*Armendariz, supra,* 24 Cal.4th at p. 119.) Another kind of substantively unconscionable provision occurs when the party imposing arbitration mandates a post-arbitration proceeding, either judicial or arbitral, wholly or largely to its benefit at the expense of the party on which the arbitration is imposed." (*Little, supra,* 29 Cal.4th at pp. 1071–1072.) In determining unconscionability, our inquiry is into whether a contract provision was "unconscionable at the time it was made." (Civ. Code, § 1670.5, subd. (a).)

 Here, the arbitration agreement was a contract of adhesion indisputably imposed as a condition of employment. Moreover, we have recognized

---

arguing that it was not afforded the opportunity to produce evidence regarding unconscionability. (See Civ. Code, § 1670.5, subd. (b).) It is true, as has been stated, that "[u]nconscionability is a question of law for the court. [Citations.] Nonetheless, factual issues may bear on that question." (*Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 480 [37 Cal.Rptr.3d 544].) When, however, there is no dispute as to the evidence, the court may resolve the unconscionability issue in the context of a petition to compel arbitration without resort to such a hearing and testimony. (See, e.g., *Armendariz, supra,* 24 Cal.4th at pp. 115–121.) Here, the only issue that Sonic specifically cites as requiring further factual or evidentiary exploration is that of surprise. As will appear below, however, we do not rely on the element of surprise in our procedural unconscionability analysis, but on the uncontested fact that the agreement was one of adhesion and imposed as a condition of employment.

Moreover, Moreno did raise the unconscionability issue below as an affirmative defense to the petition to compel arbitration. Although as a matter of general policy we do not decide issues not raised in the Court of Appeal (Cal. Rules of Court, rule 8.500(c)(1)), we may depart from that policy when an important countervailing purpose would be served. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 6–7 & fn. 2 [74 Cal.Rptr.2d 248, 954 P.2d 511] [this court has the discretion to consider important issues of law not argued by the parties below].) Here, as explained below, the issues of public policy and unconscionability are closely linked, and a decision on both issues will serve to clarify the scope of our holding, as well as more fully explain our conclusion that a rule generally prohibiting a Berman waiver as a condition of employment is not preempted by the FAA.

that contract terms imposed as a condition of employment are particularly prone to procedural unconscionability. "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra,* 24 Cal.4th at p. 115.) Moreover, many employees may not give careful scrutiny to routine personnel documents that employers ask them to sign. (See *Gentry, supra,* 42 Cal.4th at p. 471.)

■ Furthermore, for reasons suggested above, significant substantive unconscionability is also present. As explained, Berman hearing and posthearing procedures were designed to provide wage claimants with meritorious claims unique protections that lower the costs and risks of pursuing such claims, leveling a playing field that generally favors employers with greater resources and bargaining power. Requiring employees to forgo these protections as a condition of employment can only benefit the employer at the expense of the employee. Nor can we say, as also explained, that the benefits the employee gains from arbitration compensates for what he or she loses by forgoing the option of a Berman hearing.

In sum, rather than being justified by "legitimate commercial needs" (see *Armendariz, supra,* 24 Cal.4th at p. 117), the main purpose of the Berman waiver appears to be for employers to gain an advantage in the dispute resolution process by eliminating the statutory advantages accorded to employees designed to make that process fairer and more efficient. We conclude the waiver is markedly one-sided and therefore substantively unconscionable. This substantive unconscionability, together with the significant element of procedural unconscionability, leads to the conclusion that the Berman waiver in the arbitration agreement at issue here is unconscionable.

■ We note that the public policy and unconscionability defenses, albeit similar in some ways, are different in important respects. A public policy defense is concerned with the relationship of the contract to society as a whole, and targets contractual provisions that undermine a clear public policy, such as an unwaivable statutory right designed to accomplish a public purpose. (See *Armendariz, supra,* 24 Cal.4th at pp. 100–101.) Unconscionability is concerned with the relationship between the contracting parties and one-sided terms (*id.* at p. 114), such that consent in any real sense appears to be lacking. Contracts can be contrary to public policy but not unconscionable (see *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 287–288 [52 Cal.Rptr.2d 115, 914 P.2d 193] [provision in a negotiated collective bargaining contract conflicts with a statute and is therefore unenforceable]) and vice versa (see *A & M Produce Co. v. FMC Corp.* (1982) 135

Cal.App.3d 473, 493 [186 Cal.Rptr. 114] [warranty disclaimer and exclusion of consequential damages in particular commercial contract unconscionable]). But there is sometimes an overlap between these two defenses to contract enforcement.

■ Such is the case here. On the one hand, to permit employers to require employees to waive the right to a Berman hearing as a condition of employment would gravely undermine the public policy behind the Berman hearing statutes, as discussed above. On the other hand, because the Berman hearing statutes accomplish their public policy goal of ensuring prompt payment of wages by according employees special advantages in their effort to obtain such payment, a provision in a contract of adhesion that requires the employee to surrender such advantages as a condition of employment is oppressive and one-sided, and therefore unconscionable.[11]

### D. *Our Holding Is Not Preempted by the FAA*

■ Sonic contends that a holding that a predispute waiver of a Berman hearing in an arbitration agreement is contrary to public policy and unconscionable would be preempted by the FAA. To address this claim, we begin by reviewing some basic principles pertaining to the enforcement of arbitration agreements and FAA preemption. " 'California law, like federal law, favors enforcement of valid arbitration agreements. [Citation.] . . . Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (*Armendariz, supra*, 24 Cal.4th at pp. 97–98 . . . ; see also 9 U.S.C. § 2; Code Civ. Proc., § 1281.) In other words, although under federal and California law, arbitration agreements are enforced 'in accordance with their terms' (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*)), such enforcement is limited by certain general contract principles ' "at law or in equity for the revocation of any contract." ' " (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 163 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*).) Thus, "under section 2 of the FAA, a state court may

---

[11] The dissent argues that the agreement "viewed from a broader perspective . . . is not unconscionable" (dis. opn., *post*, at p. 714) because the agreement binds both parties to arbitrate all disputes, subject to certain exceptions (dis. opn., *post*, at pp. 715–716). The argument is off the mark. It is true that an arbitration agreement may be unconscionable when it requires "arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." (*Armendariz, supra*, 24 Cal.4th at p. 119.) But that is not the only form unconscionability may take. In the present case, as discussed, the Berman statutes were part of a public policy designed to advantage employees seeking wages owed. This arbitration agreement requires the employee to forgo these advantages, without seeking any comparable sacrifice from the employer. To contend that this agreement is simply a bilateral agreement to arbitrate ignores that important reality.

refuse to enforce an arbitration agreement based on 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Little, supra,* 29 Cal.4th at p. 1079, quoting *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652].)[12]

■■ The doctrine of unconscionability cannot be used, however, in a way that discriminates against arbitration agreements. In *Perry v. Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520] (*Perry*), for example, the court held that section 229, which provides in pertinent part that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate," was preempted by the FAA in all cases in which the FAA applies. The court concluded that the requirement under section 229 "that litigants be provided a judicial forum for resolving wage disputes" stood in direct conflict with the FAA. (*Perry, supra,* at p. 491.) The *Perry* court further made clear that the doctrine of unconscionability could not be used to save section 229 from FAA preemption. "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [Citations.] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (*Perry, supra,* 482 U.S. at pp. 492–493, fn. 9.)

Here, our conclusion that Berman waivers are contrary to public policy and unconscionable does not discriminate against arbitration agreements. We neither construe the arbitration agreement "in a manner different from that in which [we would] construe[] nonarbitration agreements" nor do we "rely on

---

[12] We note that in general, the question whether an arbitration agreement is unconscionable or contrary to public policy is for the court, not the arbitrator, to decide. (*Discover Bank, supra,* 36 Cal.4th at p. 171.) Recently, the Supreme Court held, in a case brought in federal court, that the question of unconscionability of an arbitration agreement may be for the arbitrator to decide when the agreement has clearly and unmistakably delegated that issue to the arbitrator. (*Rent-A-Center v. Jackson* (2010) 561 U.S. ___, ___–___ [177 L.Ed.2d 403, 130 S.Ct. 2772, 2778–2779].) Sonic has not contended that the arbitration agreement delegates responsibility to the arbitrator to decide questions of the agreement's unconscionability or violation of public policy. We thus have no need to decide whether *Rent-A-Center*'s five-to-four decision applies to actions brought in state court (see *Preston, supra,* 552 U.S. 346, 363 (dis. opn. of Thomas, J.) [reaffirming the view of Justice Thomas that the FAA does not apply to state court proceedings]), nor whether we would adopt a similar rule as a matter of state law.

the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." (*Perry, supra*, 482 U.S. at p. 492, fn. 9.) Rather, our conclusion that a Berman waiver is contrary to public policy and unconscionable is equally applicable whether the waiver appears within an arbitration agreement or independent of arbitration. Our holding does not disfavor arbitration agreements, but neither does it permit them "to 'harbor terms, conditions and practices' that undermine public policy." (*Discover Bank, supra*, 36 Cal.4th at p. 166.)

In arguing that the FAA preempts a state law rule precluding Berman waivers, Sonic relies in particular on *Preston, supra*, 552 U.S. 346, and a careful examination of that decision is therefore necessary. In *Preston*, the United States Supreme Court considered a California case arising from a dispute between a television personality, Judge Alex Ferrer, and Attorney Arnold Preston regarding fees allegedly owed the latter. The agreement between them called for dispute resolution via arbitration. Ferrer claimed, however, that the attorney had been acting as a talent agent without a license in violation of the Talent Agencies Act (TAA; § 1700 et seq.), and that therefore under the terms of that statute the contract was invalid and unenforceable. (*Preston, supra*, 552 U.S. at p. 350.) Ferrer sought to adjudicate the matter in the first instance before the Labor Commissioner, with whom the TAA vests primary jurisdiction to adjudicate disputes arising under that statute, permitting an appeal within 10 days to the superior court for a de novo hearing. (§ 1700.44.) Preston sought instead to compel arbitration, but the trial court denied the petition on the ground that the Labor Commissioner had primary jurisdiction, and the Court of Appeal affirmed. After we denied review, the United States Supreme Court granted Preston's petition for a writ of certiorari. (*Preston, supra*, 552 U.S. at pp. 350–351.)

The Supreme Court reversed, holding that the TAA's grant of primary jurisdiction to the Labor Commissioner, inasmuch as it thwarted the arbitration agreement, violated the FAA. Section 2 of the FAA, which requires enforcement of arbitration agreements "save upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2) " 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner. *Southland Corp.* [*v. Keating* (1984)] 465 U.S. [1], 10 [79 L.Ed.2d 1, 104 S.Ct. 852]. That national policy, we held in *Southland*, 'appli[es] in state as well as federal courts' and 'foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.' *Id.*, at 16. The FAA's displacement of conflicting state law is 'now well-established . . .' [citations]." (*Preston, supra*, 552 U.S. at p. 353.)

"A recurring question under § 2 is who should decide whether 'grounds . . . exist at law or in equity' to invalidate an arbitration agreement. In *Prima Paint*

*Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395, 403–404 [18 L.Ed.2d 1270, 87 S.Ct. 1801] (1967), we held that attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken. [¶] The litigation in *Prima Paint* originated in federal court, but the same rule, we held in *Buckeye* [*Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 [163 L.Ed.2d 1038, 126 S.Ct. 1204]], applies in state court. 546 U. S., at 447–448. The plaintiffs in *Buckeye* alleged that the contracts they signed, which contained arbitration clauses, were illegal under state law and void *ab initio. Id.*, at 443 [126 S.Ct. 1204]. . . . [W]e held that the plaintiffs' challenge was within the province of the arbitrator to decide. See 546 U. S., at 446 [126 S.Ct. 1204]." (*Preston, supra,* 552 U.S. at p. 353.)

The *Preston* court then concluded that "*Buckeye* largely, if not entirely, resolves the dispute before us. The contract between Preston and Ferrer clearly 'evidenc[ed] a transaction involving commerce,' 9 U. S. C. §2, and Ferrer has never disputed that the written arbitration provision in the contract falls within the purview of §2. Moreover, Ferrer sought invalidation of the contract as a whole. In the proceedings below, *he made no discrete challenge to the validity of the arbitration clause.* [Citation.] Ferrer thus urged the Labor Commissioner and California courts to override the contract's arbitration clause on a ground that *Buckeye* requires the arbitrator to decide in the first instance." (*Preston, supra,* 552 U.S. at p. 354, fn. omitted, italics added.)

The Supreme Court then rejected Ferrer's argument that the case was distinguishable from *Buckeye* because "the TAA merely requires exhaustion of administrative remedies before the parties proceed to arbitration." (*Preston, supra,* 552 U.S. at p. 354.) "The TAA permits arbitration in lieu of proceeding before the Labor Commissioner if an arbitration provision 'in a contract between a talent agency and [an artist]' both 'provides for reasonable notice to the Labor Commissioner of the time and place of all arbitration hearings' and gives the Commissioner 'the right to attend all arbitration hearings.' § 1700.45. This prescription demonstrates that there is no inherent conflict between the TAA and arbitration as a dispute resolution mechanism. But § 1700.45 was of no utility to Preston. He has consistently maintained that he is *not* a talent agent as that term is defined in § 1700.4(a), but is, instead, a personal manager not subject to the TAA's regulatory regime. [Citation.] To invoke § 1700.45, Preston would have been required to concede a point fatal to his claim for compensation—*i. e.*, that he is a talent agent, albeit an unlicensed one—and to have drafted his contract in compliance with a statute that he maintains is inapplicable.

"Procedural prescriptions of the TAA thus conflict with the FAA's dispute resolution regime in two basic respects: First, the TAA, in § 1700.44(a), grants the Labor Commissioner exclusive jurisdiction to decide an issue that

the parties agreed to arbitrate, see *Buckeye*, 546 U. S., at 446; second, the TAA, in § 1700.45, imposes prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally, see *Doctor's Associates, Inc. v. Casarotto*, 517 U. S., at 687." (*Preston, supra*, 552 U.S. at pp. 355–356.)

The Supreme Court further rejected Ferrer's contention "that the TAA is nevertheless compatible with the FAA because § 1700.44(a) merely postpones arbitration until after the Labor Commissioner has exercised her primary jurisdiction" and that after that proceeding "either party could move to compel arbitration under Cal. Civ. Proc. Code Ann. § 1281.2 (West 2007), and thereby obtain an arbitrator's determination prior to judicial review." (*Preston, supra*, 552 U.S. at p. 356.) The court noted that this position was inconsistent with the position Ferrer took below, and with a literal reading of the statute, that de novo review may be sought in superior court, not with an arbitrator. (*Preston, supra*, 552 U.S. at pp. 356–357.) But the court announced a broader holding: "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.' [Citations.] That objective would be frustrated even if Preston could compel arbitration in lieu of *de novo* Superior Court review. Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (*Preston, supra*, 552 U.S. at pp. 357–358.)

The *Preston* court distinguished the case before it from *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279 [151 L.Ed.2d 755, 122 S.Ct. 754]. In the latter case, the court had held that an arbitration agreement between an employer and an employee did not preclude the Equal Employment Opportunity Commission (EEOC) from exercising the independent prosecutorial authority granted it by Congress to pursue in court individual relief, or as the court phrased it, "victim-specific judicial relief," such as backpay, reinstatement, and damages, on behalf of employees subject to arbitration agreements. (*Id.* at p. 282; see *id.* at p. 287.) The EEOC was not a party to the arbitration agreements, and it exercises its prosecutorial duties without the consent or supervision of the employees on whose behalf it brings its action. (*Id.* at p. 291.) As the *Preston* court stated, *Waffle House* was distinguishable because "in proceedings under § 1700.44(a), the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as impartial arbiter. That role is just what the FAA-governed agreement between Ferrer and Preston reserves for the arbitrator. In contrast, in *Waffle House* . . . , the Court addressed the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings." (*Preston, supra*, 552 U.S. at p. 359.)

The Court of Appeal below, treating the federal preemption issue as a threshold matter, rejected Sonic's argument that *Preston* governs this case: "As the Supreme Court in *Preston* explained: (1) the artist was seeking to invalidate the *entire* contract based on the personal manager's alleged violations of the TAA, which is an issue that *Buckeye* requires the arbitrator to decide in the first instance; (2) the validity and substantive rights of the *arbitration* clause were not in dispute; and (3) the only issue was whether the fee dispute should be resolved in an arbitral or administrative forum. The parties did not litigate in *Preston* whether there were any generally applicable contract defenses, such as fraud, duress, or unconscionability, which would invalidate or restrict the *arbitration* agreement." The court then concluded that because the issue in the case before it was the unconscionability of the arbitration clause, *Preston* was not dispositive.

We agree with the Court of Appeal that *Preston* is distinguishable. In this case, unlike in *Buckeye* and in *Preston*, the challenge is to a portion of the arbitration agreement—the Berman waiver—as contrary to public policy and unconscionable, rather than to the contract as a whole. *Buckeye* therefore does not apply. These cases are distinguished not merely because of the nature of the litigants' challenges, but also because of the fundamental differences between the two statutory regimes at issue. The statute in *Preston*, the TAA, merely lodges primary jurisdiction in the Labor Commissioner, and does not come with the same type of statutory protections as are found in the Berman hearing and posthearing procedures discussed above.[13] In fact, notwithstanding Ferrer's argument that those in his position would be deprived of the Labor Commissioner's expertise (*Preston, supra,* 552 U.S. at p. 358), the *Preston* court recognized that section 1700.45 explicitly authorizes predispute agreements that allow parties to bypass the Labor Commissioner to resolve TAA issues through arbitration, albeit with certain conditions that could not lawfully be applied in that case (*Preston,* at p. 356). A predispute agreement that provides for such arbitration of TAA disputes, therefore, cannot be unconscionable or contrary to public policy. This is in marked contrast to the Berman hearing statutes, which have no comparable provision authorizing arbitration agreements that bypass the Labor Commissioner, and which we have construed as not permitting such agreements as a condition of employment.

Sonic makes much of a paragraph in *Preston* that it argues supports its position. As noted above, the court stated: "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious

---

[13] Section 1700.44, subdivision (a) does require that a party wishing to stay the Labor Commissioner's monetary award on appeal post a bond not exceeding twice the amount of the judgment. This provision applies to whichever party to a TAA proceeding seeks a stay, in contrast to section 98.2, subdivision (b), which imposes an undertaking requirement exclusively on the employer.

results.' [Citations.] That objective would be frustrated even if Preston could compel arbitration in lieu of *de novo* Superior Court review. Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (*Preston, supra,* 552 U.S. at pp. 357–358.)

This statement cannot be read, as Sonic urges, to mean that any state law procedure that delays the commencement of arbitration is preempted by the FAA. Rather, the *Preston* court's statement, read in context, is quite narrow. It merely affirms that a violation of the *Buckeye* rule will not be excused if the administrative agency displacing the arbitrator's jurisdiction does so only preliminarily and is subject to de novo review in arbitration, because such displacement is not costless, but in fact would lead to delay. (*Preston, supra,* 552 U.S. at pp. 357–358.) But here *Buckeye* does not apply, because of Moreno's meritorious challenge to a provision in the arbitration agreement itself. The above quoted statement explaining why the *Buckeye* rule applies notwithstanding the fact that arbitration may be delayed rather than denied cannot justifiably be expanded into a statement asserting that any time an arbitration is delayed by application of a state statute, even when *Buckeye* does not apply, the statute must be invalidated.

In arriving at this conclusion, we make clear that a state legislature or court cannot insulate itself from an FAA preemption challenge merely by declaring that the waiver of an administrative forum in an arbitration agreement is against public policy. (See *Perry, supra,* 482 U.S. at p. 492, fn. 9.) A public policy based solely on the supposed superiority of an administrative forum over arbitration could no more survive FAA preemption than could a policy based on the supposed superiority of a judicial forum. (See *Perry,* at p. 492, fn. 9.) But neither do we understand the FAA to preempt a state's authority to impose various preliminary proceedings that delay both the adjudication and the arbitration of a cause of action in order to pursue important state interests. In the FEHA, for example, before a civil action can be filed, a party must file a complaint with the Department of Fair Employment and Housing and exhaust the administrative remedy. (Gov. Code, §§ 12960, 12965; see *Blum v. Superior Court* (2006) 141 Cal.App.4th 418, 422 [45 Cal.Rptr.3d 902].) The Supreme Court has never suggested that the FAA requires that these preliminary proceedings be bypassed in order to go directly to arbitration. Indeed, under our state's law, a statutory cause of action for employment discrimination under the FEHA cannot succeed in court, nor presumably in an arbitration applying California law, unless administrative remedies have been exhausted. (See *Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 115–118 [118 Cal.Rptr.2d 249].) Exhaustion of these administrative remedies may delay the commencement both of arbitration and litigation.

So, too, a state Legislature may, as it has done with the Berman hearings, advance a certain public policy by offering certain classes of litigants the option of an informal, nonbinding administrative hearing serving as a gateway to obtaining special protections that enable the vindication of their claims. State law may also prescribe that this option is not waivable as a condition of employment. We do not understand *Preston* to stand for the proposition that this state public policy, which neither favors nor disfavors arbitration, must be invalidated because it may result in some delay in the commencement of arbitration. We do not believe that the fact the state has chosen to condition access to special procedural protections on success at a nonbinding administrative hearing, rather than, for example, on a preliminary administrative investigation, is significant from the standpoint of FAA preemption. Nor do we believe the FAA requires a wage claimant to come to an arbitration stripped of the protections and advantages state law authorizes her or him to have in court.[14]

■ We reach the same conclusion regarding Moreno's unconscionability defense. Under both the CAA and the FAA, the validity and enforceability of an arbitration agreement are based on the consent of the parties to that agreement. (See *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. ___, ___–___ [176 L.Ed.2d 605, 130 S.Ct. 1758, 1774–1775]; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1358 [82

---

[14] The dissent, in arguing for preemption of the public policy defense, cites a number of United States Supreme Court cases affirming the proposition that a state may not, in the name of public policy and the supposed superiority of litigation over arbitration, require the substitution of a judicial forum for an arbitral one. (See dis. opn., *post,* at pp. 707–714; see also *Carter v. SSC Odin Operating Co., LLC* (2010) 237 Ill.2d 30 [340 Ill.Dec. 196, 927 N.E.2d 1207].) No party to this litigation contests the truth of that proposition. But those cases do not address the question before us: Whether a state may forbid a predispute waiver of access to preliminary administrative proceedings designed to further public policy by giving special advantages to a disadvantaged group, when that antiwaiver policy applies equally to litigation and arbitration. Only *Preston* addresses the substitution of an administrative forum for a judicial one, and only one paragraph in *Preston* considers the validity of an administrative forum preliminary to an arbitral one; but as discussed above, the plaintiff in *Preston* did not, nor could he have, raise legitimate public policy or unconscionability defenses at issue here. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) That axiom applies with equal force to the one post-*Preston* case cited by the dissent that considers Berman hearing waivers, *Ruff v. Splice* (2010) 398 Ill.App.3d 431 [338 Ill.Dec. 101, 923 N.E.2d 1250]. In that case, the plaintiff, the former CEO of the defendant company, never raised public policy or unconscionability defenses to arbitration, nor is it clear that he could have, but rather argued primarily that the defendant had waived its right to arbitration. (*Id.,* 923 N.E.2d at p. 1253.) Finally, the dissent is simply incorrect in asserting that two cases holding that certain types of public injunctions are inarbitrable, *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67] and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 [133 Cal.Rptr.2d 58, 66 P.3d 1157] (cases in which the author of the dissent also dissented), are overruled by *Buckeye.* (See dis. opn., *post,* at p. 706, fn. 5.) The latter case did not even remotely consider the arbitrability of such injunctions.

Cal.Rptr.3d 229].) As discussed above, a provision of an arbitration agreement that is unconscionable lacks the meaningful consent of one of the parties due to that party's actual lack of choice and the one-sided nature of the terms imposed, notwithstanding the outward trappings of consent. Again, an unconscionability defense based simply on an employee's having to relinquish a judicial or administrative forum in favor of arbitration is precluded by the FAA. (See *Perry, supra*, 482 U.S. at pp. 492–493, fn. 9.) But here, when an employee is compelled as a condition of employment to forgo other important statutory advantages the Legislature has afforded to vindicate wage claims without gaining any significant offsetting advantages, we have no difficulty concluding that the lack of meaningful consent in that situation places the employee's unconscionability claim beyond the scope of FAA preemption.

In short, our holding invalidating Berman waivers neither falls within the purview of *Preston* and *Buckeye*, nor relies on rules of contract law that particularly disfavor arbitration, but rather is based on the generally applicable contract defenses of unconscionability and violation of public policy. We therefore conclude our holding is not preempted by the FAA.

### III. Disposition

As noted, the superior court order stated that "until there has been the preliminary non-binding hearing and decision by the Labor Commissioner, the arbitration provisions of the employment contract are unenforceable, and any petition to compel arbitration is premature and must be denied." The judgment of the Court of Appeal is reversed and the cause is remanded with directions to reinstate the superior court's order.

Kennard, Acting C. J., Werdegar, J., and George, J.,* concurred.

**CHIN, J.,** Dissenting.—Both California and federal law strongly favor judicial enforcement of arbitration agreements according to their terms. The majority's conclusion that the arbitration agreement in this case is contrary to public policy—and therefore unenforceable—is inconsistent with the state and federal policies favoring enforcement of arbitration agreements and is inconsistent with decisions of both this court and the United States Supreme Court. Moreover, because, as the United States Supreme Court recently held, federal law—the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.)— "supersede[s]" state laws that "lodg[e] primary jurisdiction" over a dispute the parties have agreed to arbitrate in an "administrative" forum (*Preston v.*

---

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Ferrer* (2008) 552 U.S. 346, 349–350 [169 L.Ed.2d 917, 128 S.Ct. 978] (*Preston*)), California's statutory scheme, as the majority construes it, is preempted. I therefore disagree with the majority's conclusion.

I also do not join the majority's holding that the arbitration provision in this case is unconscionable—and therefore unenforceable—insofar as it precludes the wage claimant from requesting an administrative hearing—known as a "Berman hearing"—before submitting his claim for vacation pay to arbitration. Procedurally, we should not reach this issue, because the claimant did not pursue it in the trial court, in the Court of Appeal, or in this court until we requested briefing on it. Substantively, the majority errs by discounting the benefits to the employee of waiving the right to pursue a Berman hearing. It also errs in focusing narrowly only on what it calls the "Berman waiver." (Maj. opn., *ante*, at p. 669.) In assessing substantive unconscionability, we should instead focus broadly on the purpose and benefits of the arbitration provision as a whole. Viewed from this broader perspective, the arbitration provision is not unconscionable.

For these reasons, I dissent.

## I. Factual Background.

Frank Moreno was an employee of Sonic-Calabasas A, Inc. (Sonic). In December 2006, after voluntarily ending his employment, Moreno filed a wage claim with the Labor Commissioner pursuant to Labor Code section 98 et seq.[1] seeking allegedly unpaid "vacation wages" for 63 days at the rate of $441.29 per day. He also requested "additional wages accrued pursuant to Labor Code Section 203 as a penalty."

In February 2007, Sonic filed in the superior court a petition to compel arbitration of Moreno's claim and to dismiss his pending administrative action. It relied on the broad and comprehensive arbitration provision in an agreement Moreno had signed, which provides in relevant part: "I . . . acknowledge that [Sonic] utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both [Sonic] and myself, both [Sonic] and I agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment . . .) that either I or [Sonic] . . . may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or

---

[1] All further unlabeled statutory references are to the Labor Code.

having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with [Sonic], whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act . . . , claims for medical and disability benefits under the California Workers Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec. 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). However, nothing herein shall prevent me from filing and pursuing administrative proceedings only before the California Department of Fair Employment and Housing, or the U.S. Equal Opportunity Commission."

Moreno and the Labor Commissioner, who intervened on Moreno's behalf, opposed Sonic's motion to compel. They argued that, insofar as the arbitration agreement may be interpreted to preclude Moreno from pursuing a Berman hearing, it substantially burdens his ability to vindicate his right to vacation pay and, therefore, is unenforceable as against public policy.

The superior court denied the petition to compel arbitration, finding that the arbitration provision violates public policy insofar as it waives Moreno's right to pursue a Berman hearing. The Court of Appeal reversed, finding that this waiver does not substantially burden Moreno's ability to vindicate his right to vacation pay and, therefore, is not unenforceable as against public policy.

## II. Enforcement of the Arbitration Provision Does Not Violate California's Public Policy.

Through enactment of a comprehensive statutory scheme regulating private arbitration, the Legislature "has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) "The policy of [California's] law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." (*Utah Const. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159 [162 P. 631].) Thus, California law establishes "a presumption in favor of arbitrability." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971 [64 Cal.Rptr.2d 843, 938 P.2d 903] (*Engalla*).)

The clearest expression of California's policy favoring arbitration appears in Code of Civil Procedure section 1281, which declares that "[a] written

agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." This section establishes the "fundamental policy" of California's arbitration scheme: "that arbitration agreements will be enforced *in accordance with their terms.*" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10 [88 Cal.Rptr.2d 366, 982 P.2d 229].) To implement this policy, Code of Civil Procedure section 1281.2 directs that, on petition, a court "shall order" arbitration "if it determines that an agreement to arbitrate the controversy exists, unless it determines that" one of only three specified exceptions applies: (1) the petitioner has waived the right to compel arbitration; (2) grounds exist for revoking the agreement; or (3) a party to the agreement is also a party to a pending legal proceeding with a third party that arises out of the same transaction, and a possibility exists of conflicting rulings on common legal or factual issues.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171 [30 Cal.Rptr.3d 76, 113 P.3d 1100], the majority indicated that one ground for revoking an arbitration agreement is that the agreement is "contrary to public policy." However, because public policy requires and encourages the making of contracts upon all valid and lawful considerations, and because the courts' power to declare a contract void as against public policy is " 'very delicate and undefined,' " courts should exercise this power " 'only in cases free from doubt,' " where "it is entirely plain" that the contract violates sound public policy. (*Stephens v. Southern Pacific Co.* (1895) 109 Cal. 86, 89 [41 P. 783] (*Stephens*).) This general principle of contract law applies with added force where an arbitration agreement is at issue, given California's public policy favoring arbitration. Because arbitration is, under California law, "a highly favored means of settling [employment] disputes," courts must " 'indulge every intendment to give effect to such proceedings' " and "should endeavor to reach a result [that] comports with the 'strong public policy' favoring arbitration." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261] (*Doers*).) The party challenging the contractual arbitration provision bears the burden of showing that its enforcement would violate " 'settled public policy.' " (*Stephens, supra*, at p. 90.)

In several relatively recent decisions, we have discussed the scope of the public policy exception to the statutory rule that arbitration agreements are enforceable according to their terms. In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 91 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), we considered the validity of an agreement, imposed by the employer as a condition of employment, that required an employee to arbitrate a discrimination claim brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). We first found that, because "the statutory rights established by the FEHA are 'for a public reason' " (*Armendariz, supra*, at p. 100), "FEHA rights are unwaivable" (*id.* at

p. 112), and a mandatory arbitration agreement "cannot be made to serve as a vehicle for [their] waiver" (*id.* at p. 101). We then held that such an agreement is valid and enforceable "*if* the arbitration permits an employee to vindicate his or her statutory rights. . . . [I]n order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Id.* at pp. 90–91.)

We next took up the issue in *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 450 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*), which involved the validity of a predispute arbitration agreement that precluded class arbitration of employees' statutory claims for overtime pay. In a closely divided decision, a bare majority of this court held that, because the statutory right to overtime pay fosters the public health and welfare and is therefore unwaivable, a class arbitration waiver is unenforceable if it significantly and substantially burdens the ability of employees to vindicate their rights to overtime pay by placing serious and formidable obstacles in the way of prosecuting claims for such pay (*id.* at pp. 450, 463–466).

Applying the framework of *Armendariz* and *Gentry*, the Court of Appeal in this case first considered whether the right to vacation pay is an unwaivable statutory right. Concluding that it is, the court then considered whether arbitration would significantly impair Moreno's ability to vindicate this right. Finding nothing in the record to indicate that it would, the Court of Appeal held that the arbitration provision is enforceable.

The Court of Appeal correctly applied *Armendariz* and *Gentry*. As the majority observes, " '[t]he Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims.' " (Maj. opn., *ante*, at p. 672.) Arbitration is similarly designed; our public policy favors arbitration precisely because it is a speedy, informal, and relatively inexpensive means of dispute resolution. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1080 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*); *Moncharsh, supra*, 3 Cal.4th at p. 9.) It is true, as the majority explains, that a Berman hearing may offer some employees certain procedural advantages that may, in a given case, make it somewhat easier to recover unpaid vacation wages. (Maj. opn., *ante*, at pp. 680–681.) But that circumstance does not establish that arbitration according to the terms of arbitration agreements would not "permit[]"employees "to vindicate" their statutory right to vacation pay—which is the relevant inquiry under *Armendariz, supra*, 24 Cal.4th at page 90—or would significantly and substantially burden their ability to vindicate that right by placing serious and formidable obstacles in the way of prosecuting their claims for overtime pay—which appears to be the inquiry

under the *Gentry* majority's reformulation of *Armendariz.* (*Gentry, supra,* 42 Cal.4th at pp. 450, 463–466.) Because California's public policy favoring arbitration requires us to " 'indulge every intendment to give effect to' " an arbitration provision (*Doers, supra,* 23 Cal.3d at p. 189), and because we should not declare a contract to be void as against public policy unless that conclusion is " 'free from doubt' " and "entirely plain" (*Stephens, supra,* 109 Cal. at p. 89), that some claimants might be somewhat better off with a Berman hearing does not justify a holding that a predispute waiver of the right to request a Berman hearing is void as against public policy.[2]

There are several indications that the Legislature agrees with this conclusion. To begin with, nothing in the language of the statutes setting forth the Berman procedures (the Berman statutes) even hints that those procedures are nonwaivable or that an employee may not agree to arbitrate a claim. Moreover, under the statutes, there is, in fact, no right to a Berman hearing; there is only a right to file a complaint *requesting* a Berman hearing. As the majority observes, in response to the filing of such a complaint, the Labor Commissioner has three options: (1) hold a Berman hearing; (2) prosecute a civil action; or (3) take no action on the complaint. (Maj. opn., *ante,* at p. 672.) The benefits of a Berman hearing are potentially available only if the Labor Commissioner chooses the first option. Finally, as the majority also observes, an employee may choose to skip the administrative procedure entirely and go directly to court. (Maj. opn., *ante,* at p. 671.) The Legislature's failure to make a Berman hearing mandatory and the absence of any language prohibiting waiver suggest that, in the Legislature's view, an employee may adequately vindicate the statutory right to vacation pay in an alternative forum, such as arbitration. I see no reason to reject the Legislature's view.

Notably, the majority does not contend otherwise. It does not assert that requiring Moreno to arbitrate according to his agreement would either eliminate or substantially burden his ability to vindicate his right to vacation pay. In fact, according to the majority, notwithstanding *Armendariz* and *Gentry,* that is not even the relevant inquiry. Instead, the majority asserts, "the question [here] is whether [an] employee's statutory right to seek a Berman hearing, with all the possible protections that follow from it, is itself

---

[2] Moreover, upon examination, the potential procedural advantages of a Berman hearing are not as great as the majority indicates. Ironically, what the majority views as a vice of the arbitration agreement here at issue—the provision for discovery (maj. opn., *ante,* at p. 680)—we held in *Armendariz* to be a virtue—indeed *a requirement*—of a valid and enforceable arbitration agreement. (*Armendariz, supra,* 24 Cal.4th at pp. 90–91.) Also, the holding of a Berman hearing may actually hinder an employee's ability to vindicate his or her right to vacation pay; the Berman statutes *discourage* employees who lose at Berman hearings from seeking judicial review by providing that they *must,* if unsuccessful on appeal, pay their employers' costs and attorney's fees. (§ 98.2, subd. (c).)

an unwaivable right that an employee cannot be compelled to relinquish as a condition of employment." (Maj. opn., *ante*, at p. 678.) The majority then concludes that this right is unwaivable (*ibid.*), reasoning, "permitting employers to require employees, as a condition of employment, to waive their right to a Berman hearing would seriously undermine the efficacy of the Berman hearing statutes and hence thwart the public purpose behind the statutes" (*id.* at p. 679).

Initially, I note that the majority's formulation of the issue here is completely at odds with Moreno's. As he did in the trial court and the Court of Appeal, Moreno has consistently argued in this court that the arbitration agreement is against public policy—and thus unenforceable—because arbitration lacks some of the procedural advantages that may come with a Berman hearing and therefore "would drastically undercut his ability to vindicate" his nonwaivable, statutory right to vacation pay. Indeed, according to Moreno, analyzing whether the alleged benefits of a Berman hearing "are substantive, unwaivable rights in their own"—which is precisely what the majority does—"confuses what it is that is unwaivable—the underlying statutory right to payment of accrued vacation wages upon separation of employment—with the remedial tools that flow from the Labor Commissioner's wage adjudication process." Thus, the majority's analysis will, no doubt, come as a surprise to the parties.

Substantively, as to whether an employee's statutory right to request a Berman hearing is itself waivable, irrespective of an employee's ability to vindicate his or her right to vacation pay in arbitration, the "established rule" in California is that "rights conferred by statute may be waived unless specific statutory provisions prohibit waiver." (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4 [68 Cal.Rptr.2d 758, 946 P.2d 427] (*Bickel*).) "As we have recognized for over a century, the law 'will not compel a man to insist upon any benefit or advantage secured to him individually.' [Citation.] Accordingly, a party may waive compliance with statutory conditions intended for his or her benefit, so long as the Legislature has not made those conditions mandatory. [Citations.]" (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 426–427 [2 Cal.Rptr.3d 699, 73 P.3d 554] (*Sharon S.*).) Thus, under the majority's approach, the starting point for the inquiry should be "whether there is any [statutory] language . . . prohibiting a waiver" of an employee's right to request a Berman hearing. (*Bickel, supra*, at p. 1049.)

Here, the relevant statutes contain no language even hinting that the right to request a Berman hearing is unwaivable or that the holding of a Berman hearing is mandatory. Indeed, by allowing employees to skip the administrative process entirely and go directly to court, the statutory language suggests

just the opposite, i.e., that employees may waive their right to request a Berman hearing. Moreover, nothing in the statutory language indicates that an employee's ability to waive this right exists only after a dispute has arisen. In short, the statutory language offers no support for the majority's conclusion. Nor does anything in the relevant legislative history support the majority's view.

Again, the majority does not assert otherwise. Instead, in concluding that the right to request a Berman hearing is unwaivable, the majority invokes the principle that a law established for a public reason may not be contravened by a private act or agreement. (Maj. opn., *ante*, at pp. 678–680.)

For several reasons, the majority's analysis is unpersuasive. First, given that the Legislature has already established a public policy of allowing waiver—by not making a Berman hearing mandatory and by allowing employees to go directly to court without requesting a Berman hearing—it seems inappropriate for this court to adopt a contrary view of public policy. Second, as the court's opinion in *Bickel* explained, "[s]ome public benefit is . . . inherent in most legislation." (*Bickel, supra,* 16 Cal.4th at p. 1049.) Thus, "[t]he pertinent inquiry" under the principle the majority invokes "is not whether the law has *any* public benefit, but whether that benefit is merely incidental to the legislation's primary purpose." (*Ibid.*, italics added.) Unquestionably, the *primary* purpose of the Berman statutes is to assist the *individual employee* in recovering unpaid wages. Although the public may benefit from such recovery, that benefit is merely incidental to the statutes' primary purpose. Moreover, because, as I have explained, arbitration would enable Moreno to vindicate his right to vacation pay, waiver of his right to request a Berman hearing would not " 'seriously compromise any public purpose' " the statutes were " 'intended to serve' [citation]." (*Sharon S., supra,* 31 Cal.4th at p. 426.) Therefore, the principle on which the majority relies does not apply here to preclude employees, by agreeing to arbitration, from waiving their right to request a Berman hearing.

This conclusion is consistent with analogous authority from both this court and the United States Supreme Court. In *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 640 [87 L.Ed.2d 444, 105 S.Ct. 3346] (*Mitsubishi Motors*), the high court held that a federal antitrust claim is arbitrable under an arbitration clause in an agreement embodying an international commercial transaction. A contrary result, the court explained, could not be justified by "the fundamental importance to American democratic capitalism of the regime of the antitrust laws. [Citations.]" (*Id.* at p. 634.) Although acknowledging that an antitrust claim is not merely a private matter, that the antitrust laws are designed to promote the national interest in a competitive economy, that an antitrust plaintiff acts as a private attorney

general who protects the public's interest, and that the treble damages provision of the antitrust law is a chief tool in the antitrust enforcement scheme, the court explained: "The [public] importance of the private damages remedy, however, does not compel the conclusion that it may not be sought outside an American court. Notwithstanding its important incidental policing function, the treble-damages cause of action . . . seeks primarily to enable an injured competitor to gain compensation for that injury." (*Id.* at p. 635.) "And, of course, the antitrust cause of action remains at all times under the control of the individual litigant: no citizen is under an obligation to bring an antitrust suit [citation] and the private antitrust plaintiff needs no executive or judicial approval before settling one. It follows that, at least where the international cast of a transaction would otherwise add an element of uncertainty to dispute resolution, the prospective litigant may provide in advance for a mutually agreeable procedure whereby he would seek his antitrust recovery as well as settle other controversies. [¶] . . . [S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the [antitrust] statute will continue to serve both its remedial and deterrent function." (*Id.* at pp. 636–637.)

In *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220 [96 L.Ed.2d 185, 107 S.Ct. 2332] (*McMahon*), the court held valid and enforceable a predispute agreement to arbitrate a claim brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.). In reaching its conclusion, the court rejected the argument that "the public interest in the enforcement of RICO precludes" submission of a RICO claim to arbitration. (*McMahon*, at p. 240.) The court found that, like the antitrust treble damages provision at issue in *Mitsubishi Motors*, RICO's treble damages remedy has primarily a "remedial purpose," and that its "policing function . . . , although important, [is] a secondary concern. [Citation.]" (*McMahon*, at pp. 240–241.) Because RICO plaintiffs "may effectively vindicate their RICO claim[s] in an arbitral forum, . . . there is no inherent conflict between arbitration and the purposes underlying [RICO]." (*McMahon*, at p. 242.)

In *Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477 [104 L.Ed.2d 526, 109 S.Ct. 1917] (*Rodriguez de Quijas*), the court held that predispute agreements to arbitrate claims under the federal Securities Act of 1933 (1933 Act) (15 U.S.C. § 77a et seq.) are valid and enforceable. About 35 years earlier, in *Wilko v. Swan* (1953) 346 U.S. 427 [98 L.Ed. 168, 74 S.Ct. 182] (*Wilko*), the court held otherwise, relying largely on the fact that the 1933 Act conferred on buyers of securities special procedural advantages, including broadened venue and nationwide service of process in federal court, no amount-in-controversy requirement for diversity cases, and concurrent jurisdiction in state and federal courts without the possibility of removal. (*Wilko*, at pp. 431–435.) Congress provided these advantages, the court

explained in *Wilko*, in recognition of "the disadvantages under which buyers labor" vis-à-vis sellers, i.e., less opportunity to investigate and appraise factors affecting a security's value. (*Id.* at p. 435.) Predispute arbitration agreements are problematic, the *Wilko* court reasoned, because the buyer is "surrender[ing] . . . the [procedural] advantages the [1933] Act gives him . . . at [precisely] a time when he is less able to judge the weight of the handicap the [1933] Act places upon his adversary." (*Ibid.*) In this regard, the *Wilko* court declared, "a waiver in advance of a controversy stands upon a different footing" than a postdispute waiver. (*Id.* at p. 438.) When the high court later overruled *Wilko*, it held that a buyer's procedural advantages in litigation are not "so critical that they cannot be waived [in a predispute arbitration agreement] under the rationale that the [1933] Act was intended to place buyers of securities on an equal footing with sellers." (*Rodriguez de Quijas, supra*, at p. 481.) Among other things, the court reasoned, "the grant of concurrent jurisdiction constitutes explicit authorization for [buyers] to waive" the other procedural advantages "by filing suit in state court without possibility of removal to federal court." (*Id.* at p. 482.)

In *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 23 [114 L.Ed.2d 26, 111 S.Ct. 1647] (*Gilmer*), the high court held that a mandatory, predispute employment agreement to arbitrate an age discrimination claim brought under federal law is valid and enforceable. In reaching this conclusion, the court rejected the argument that the arbitration agreement was unenforceable because the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 621 et seq.) "is designed not only to address individual grievances, but also to further important social policies. [Citation.]" (*Gilmer*, at p. 27.) The court explained: "We do not perceive any inherent inconsistency between those policies, however, and enforcing agreements to arbitrate age discrimination claims. . . . Both [arbitration and judicial dispute resolution] . . . can further broader social purposes. . . . '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' [Citation.]" (*Id.* at pp. 27–28.) The court also rejected the argument that arbitration was inadequate because it offered more limited discovery than litigation in court, explaining: "[T]here has been no showing in this case that the [arbitration] discovery provisions . . . will prove insufficient to allow ADEA claimants . . . a fair opportunity to present their claims. Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.' [Citation.]" (*Id.* at p. 31.) Finally, the court rejected the claim that the mandatory, predispute employment arbitration clause should be unenforceable because "there often will be unequal bargaining power between employers and employees." (*Id.* at p. 33.) "Mere inequality in

bargaining power," the court explained, "is not a sufficient reason to hold that [mandatory, predispute] arbitration agreements are never enforceable in the employment context." A "claim of unequal bargaining power," the court held, "is best left for resolution in specific cases" on specific facts. (*Ibid.*)

In several decisions, we have followed these high court precedents to uphold the validity of predispute arbitration agreements. In *Broughton, supra*, 21 Cal.4th at page 1084, at issue was a predispute agreement to arbitrate a damage claim under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). In holding that the agreement was valid and enforceable, we explained: "Such an action is primarily for the benefit of a party to the arbitration, even if the action incidentally vindicates important public interests. [Citation.] In the context of statutory damages claims, the United States Supreme Court has consistently rejected plaintiffs' arguments that abbreviated discovery, arbitration's inability to establish binding precedent, and a plaintiff's right to a jury trial render the arbitral forum inadequate, or that submission of resolution of the claims to arbitration is in any sense a waiver of the substantive rights afforded by statute. [Citations.] 'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' [Citation.]" (*Broughton, supra*, at p. 1084.)

In *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317–318 [133 Cal.Rptr.2d 58, 66 P.3d 1157] (*Cruz*), we held that a predispute agreement to arbitrate a claim for restitution and disgorgement under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) is valid and enforceable. In reaching this conclusion, we rejected the argument that such a claim is inarbitrable because "restitution under the UCL accomplishes a public purpose by deterring unlawful conduct," explaining: "[T]he same could be said of damages under the CLRA or under various federal statutes. This deterrent effect is, however, incidental to the private benefits obtained from those bringing the restitutionary or damages action. [Citation.] The Supreme Court has made clear that such actions, notwithstanding the public benefit, are fully arbitrable under the FAA."[3] (*Cruz*, at p. 318.)

---

[3] In *Broughton*, a bare majority of the court also held that a predispute agreement to arbitrate a CLRA for *injunctive* relief is not enforceable, based on its view that such relief "is for the benefit of the general public rather than the party bringing the action." (*Broughton, supra*, 21 Cal.4th at p. 1082.) Any benefit to the individual plaintiff, the majority argued, would likely "be incidental to the general public benefit . . . ." (*Id.* at p. 1080, fn. 5.) In *Cruz*, a bare majority of the court reaffirmed this holding and extended it to consumer claims for injunctive relief under the UCL and for false advertising. (*Cruz, supra*, 30 Cal.4th at pp. 312–316.) Such relief, the majority asserted, is "designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff." (*Id.* at p. 316.)

These authorities support the conclusion that the arbitration agreement here at issue is valid and enforceable according to its terms. Like the claims at issue in those cases, a claim for recovery of vacation pay is a remedial claim that primarily benefits the individual employee. Thus, any public benefit from such a claim is merely incidental to the legislation's primary purpose. Like the procedures at issue in *Rodriguez de Quijas*, the potential procedural advantages of a Berman hearing are not "so critical that they cannot be waived" in a predispute arbitration agreement under the rationale that the Berman statutes were intended to place employees on an equal footing with employers (cf. *Rodriguez de Quijas, supra*, 490 U.S. at p. 481), or, as the majority puts it, to "level[]" the "playing field" (maj. opn., *ante*, at p. 686). The Legislature itself has established this fact by providing that an employee may skip the administrative process and go directly to court, and that the Labor Commission may take no action on a claim or file a civil claim without holding a Berman hearing. These provisions, like the provision granting concurrent jurisdiction in *Rodriguez de Quijas*, "constitute[] explicit authorization for [employees] to waive" the potential procedural advantages of a Berman hearing.[4] (*Rodriguez de Quijas*, at p. 482.) Moreover, as I have previously explained, even without a Berman hearing's potential procedural advantages, employees may effectively vindicate their statutory right to unpaid vacation pay in arbitration. Finally, as *Gilmer* establishes, the majority's concern that employees have fewer resources and less "bargaining power" than employers (maj. opn., *ante*, at p. 686) "is not a sufficient reason to hold that [mandatory, predispute] arbitration agreements are never enforceable in the employment context." (*Gilmer, supra*, 500 U.S. at p. 33.) A "claim of unequal bargaining power is best left for resolution in specific cases" on specific facts.[5] (*Gilmer*, at p. 33.) Under these decisions—which the majority completely ignores, while offering none in support of its conclusion—the arbitration agreement in this case is enforceable according to its terms.

### III. The Berman Statutes, as the Majority Construes Them, Are Preempted by the FAA.

As the high court has explained, the FAA not only declares a liberal federal policy favoring arbitration agreements, it creates a body of federal substantive law that requires courts to enforce privately negotiated arbitration agreements within the FAA's coverage according to their terms. (*Volt Info. Sciences v.*

---

[4] Moreover, in light of these provisions, enforcing an employee's waiver of the right to pursue a Berman hearing does not, as the majority asserts, "undermine the legislative policy behind the Berman hearing statutes." (Maj. opn., *ante*, at p. 684, fn. 9.)

[5] Contrary to *Gilmer*, the majority holds that mandatory, predispute agreements to arbitrate a claim for vacation pay are generally unenforceable, but leaves open the possibility that such an agreement is enforceable "as part of a freely negotiated, nonstandard contract, such as may exist between an employer and a highly compensated executive employee." (Maj. opn., *ante*, at p. 682, fn. 7.)

*Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248]; *Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927].) This federal policy and substantive law apply "notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Hospital,* 460 U.S. at p. 24.) In other words, Congress, in enacting the FAA, "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements" (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [79 L.Ed.2d 1, 104 S.Ct. 852] (*Southland*)), and "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration" (*id.* at p. 10). In short, the FAA "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.' [Citation.] '. . . [N]othing in the [FAA] indicat[es] that the broad principle of enforceability is subject to any additional limitations under state law.' [Citation.]" (*Perry v. Thomas* (1987) 482 U.S. 483, 489–490 [96 L.Ed.2d 426, 107 S.Ct. 2520].)

In *Preston,* the high court recently made clear that the FAA preempts not only state laws that require a judicial forum for resolution of disputes the parties have agreed to arbitrate, but also "state statutes that refer [such] disputes initially to an administrative agency." (*Preston, supra,* 552 U.S. at p. 349.) At issue there was the constitutionality of a California statute very much like the Berman statutes in that it required the Labor Commissioner to "hear and determine" disputes arising under California's Talent Agencies Act (TAA) (§ 1700 et seq.), "subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo." (§ 1700.44, subd. (a).) In *Preston,* an attorney who performed services in the entertainment industry sought recovery of fees for services rendered to a former Florida judge who appeared on television. (552 U.S. at p. 350.) The attorney demanded arbitration based on the parties' agreement to arbitrate any dispute relating to their contract. The former judge responded by filing a petition with the Labor Commissioner charging that their contract was illegal because, in violation of the TAA, the attorney had acted as a talent agent without the required license. (*Preston, supra,* at p. 350.) A California trial court denied the motion to compel arbitration, and the California Court of Appeal affirmed that decision, reasoning that section 1700.44, subdivision (a), "vest[ed] 'exclusive original jurisdiction' over the dispute in the Labor Commissioner. [Citation.]" (*Preston, supra,* at p. 351.) The high court reversed, holding that the statute "conflict[ed] with the FAA's dispute resolution regime" by "grant[ing] the Labor Commissioner exclusive jurisdiction to decide an issue that the parties agreed to arbitrate [citation] . . . ." (*Preston, supra,* at p. 356.) In reaching its conclusion, the court rejected the claim that, because de novo review of the

Labor Commissioner's decision could proceed as an arbitration, the TAA was "nevertheless compatible with the FAA." (*Preston, supra,* at p. 356.) This approach, the court explained, would frustrate "a prime objective" of an arbitration agreement: "to achieve 'streamlined proceedings and expeditious results.' [Citation.]" (*Id.* at pp. 357–358.) "Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (*Id.* at p. 358.) Thus, the court held, "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." (*Id.* at p. 359.)

The majority holds that the Berman statutes do precisely what *Preston* says, under the FAA, a state statute may not do: lodge primary jurisdiction over a dispute in an administrative agency notwithstanding the parties' agreement to arbitrate that dispute. Under *Preston,* the Berman statutes, so construed, directly conflict with the FAA and violate the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2). *Preston* also establishes that the availability of arbitration after a Berman hearing, as part of the statutory de novo review process, does not permit a different conclusion. What the high court said about the TAA in *Preston* fully applies to the Berman statutes, as the majority construes them: "Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (*Preston, supra,* 552 U.S. at p. 358.) In this regard, the majority acknowledges that we noted in 1998 that the time between filing a complaint with the Labor Commissioner and a Berman hearing date was usually four to six months, and that Sonic has documented cases in which the commencement of a Berman hearing took a year or more. (Maj. opn., *ante,* at p. 681, fn. 5.) Moreover, as we have previously observed, because either party to a Berman hearing "has a right to a trial de novo in superior court, where the ruling of the Labor Commissioner's hearing officer is entitled to no deference," "Berman hearings may result in no cost savings" to the parties. (*Gentry, supra,* 42 Cal.4th at p. 464.) Thus, the prospect of arbitration after a Berman hearing does not alter the conclusion that the Berman statutes, as the majority construes them, are incompatible with the FAA. In short, as an Illinois appellate court held just last year, "*Preston* makes it clear that the [FAA] preempts" the Berman statutes insofar as they "vest[] [primary] jurisdiction in the [Labor] Commissioner rather than an arbitration proceeding . . . as provided in [a] contract." (*Ruff v. Splice* (2010) 398 Ill.App.3d 431 [338 Ill.Dec. 101, 923 N.E.2d 1250, 1253].)

The majority's grounds for distinguishing *Preston* are unpersuasive. The majority first observes that unlike *Preston,* which involved a challenge to the parties' "contract as a whole," this case involves a challenge only "to a portion of the arbitration agreement." (Maj. opn., *ante,* at p. 692.) This observation, although accurate, is irrelevant. In *Preston,* the circumstance that

the challenge was to the contract as a whole, rather than only to its arbitration clause, was material only to the court's threshold determination that the dispute between the parties presented an issue that, but for the TAA, would be for the arbitrator to decide in the first instance. (*Preston, supra*, 552 U.S. at p. 353.) It played no part in the court's subsequent holding—which is the part of *Preston* that governs here—that the FAA preempts the TAA insofar as the TAA confers on the Labor Commissioner primary jurisdiction to decide an issue the parties have agreed to arbitrate. Here, it is undisputed that Moreno's claim for vacation pay presents issues that, but for the majority's construction of the Berman statutes, would be for the arbitrator to decide in the first instance. Thus, that *Preston* involved a challenge to the contract as a whole does not diminish the controlling force of its unqualified and unequivocal holding that the FAA preempts state laws that lodge in an administrative agency primary jurisdiction over an issue the parties have agreed to arbitrate. (*Preston, supra*, at pp. 349–350.)

The majority next asserts that *Preston* is distinguishable because of "the fundamental differences" between the TAA and the "statutory regime[]" now before us. (Maj. opn., *ante*, at p. 692.) According to the majority, because the TAA "does not come with the same type of statutory protections as are found in the Berman hearing and posthearing procedures," *Preston* does not govern. (Maj. opn., *ante*, at p. 692.)

The potential procedural advantages the Legislature has attached to a Berman hearing do not render *Preston* inapplicable. Under *Preston*, were our Legislature, based on its view of public policy, to enact a statute requiring administrative determination of a claim before resort to any other forum, the FAA would preempt that statute's enforcement where the parties have agreed, in a predispute agreement evidencing interstate commerce, to arbitrate that claim. Indeed, this conclusion follows not just from *Preston*, but from other decisions in which the high court has expressly "rejected the proposition that the enforceability of [an] arbitration agreement turn[s] on [a] state legislature's judgment concerning the forum for enforcement of [a] state-law cause of action. [Citation.]" (*Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 446 [163 L.Ed.2d 1038, 126 S.Ct. 1204] (*Buckeye*).) The Legislature may not circumvent this proscription simply by attaching advantageous procedures to the administrative process and declaring—either expressly or, as the majority finds here, impliedly—those procedures to be unwaivable as a matter of public policy. As the high court has made clear, the FAA's preemptive policy requiring enforcement of arbitration agreements according to their terms applies "notwithstanding any state substantive *or procedural* policies to the contrary." (*Moses H. Cone Hospital v. Mercury Constr. Corp., supra*, 460 U.S. at p. 24, italics added.)

Nor, contrary to the majority's analysis, may a state legislature—or in this case, a state court—avoid this FAA proscription by invoking the rule that the FAA permits revocation of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The high court has twice expressly rejected this very approach. In *Southland*, the court held that the FAA preempted California's Franchise Investment Law (Corp. Code, § 31000 et seq.) insofar as we had construed it to prohibit enforcement of agreements to arbitrate claims under that law. (*Southland, supra*, 465 U.S. at p. 10.) Justice Stevens dissented from this holding, relying on the same FAA enforceability exception the majority now invokes: revocation "based on 'such grounds as exist at law or in equity for the revocation of any contract.' " (465 U.S. at p. 18 (conc. & dis. opn. of Stevens, J.).) He reasoned that, because a contract void as contrary to public policy is revocable at law or in equity, the FAA does not preempt a state law that "provid[es] special protection" to franchisees by declaring agreements to arbitrate claims under the Franchise Investment Law void as a matter of public policy. (465 U.S. at p. 21.) The *Southland* majority rejected this view, explaining: "We agree, of course, that a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of *any* contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise Investment Law. Moreover, under [Justice Stevens's] view, 'a state policy of providing special protection for franchisees . . . can be recognized without impairing the basic purposes of the federal statute.' [Citation.] If we accepted this analysis, states could wholly eviscerate congressional intent to place arbitration agreements 'upon the same footing as other contracts,' [citation] simply by passing statutes such as the Franchise Investment Law. We have rejected this analysis because it is in conflict with the [FAA] and would permit states to override the declared policy requiring enforcement of arbitration agreements." (*Id.* at pp. 16–17, fn. 11.)

The majority's analysis is inconsistent with *Southland*. Contrary to the majority's conclusion, under *Southland*, "the defense to arbitration" the majority has read into the Berman statutes—based on a state public policy that precludes waiver of a Berman hearing's potential procedural advantages—"is not a ground that exists at law or in equity 'for the revocation of *any* contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to" the Berman statutes. (*Southland, supra*, 465 U.S. at p. 16, fn. 11; see *Carter v. SSC Odin Operating Co., LLC* (2010) 237 Ill.2d 30 [340 Ill.Dec. 196, 927 N.E.2d 1207, 1218–1219] (*Carter*) (antiwaiver provisions of state Nursing Home Care Act, although based on public policy, "are not a defense generally applicable to 'any contract' "

because they "invalidate arbitration agreements [only] in a specific type of contract—those involving nursing care"].) Also contrary to *Southland*, the majority's view that California may implement a " 'a state policy of providing special protection for' " a class of individuals—in this case, employees—will permit California "wholly [to] eviscerate congressional intent to place arbitration agreements 'upon the same footing as other contracts,' [citation] simply by passing statutes such as" the Berman statutes. (*Southland*, at p. 16, fn. 11.) In this regard, the majority's approach, *Southland* declares, "conflict[s] with" the FAA and, therefore, is impermissible. (*Southland*, at p. 16, fn. 11.)

The majority's analysis is also inconsistent with the high court's more recent decision in *Buckeye, supra*, 546 U.S. 440. In *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 402–404 [18 L.Ed.2d 1270, 87 S.Ct. 1801], the court held that, as a matter of substantive federal arbitration law, a contract's arbitration provision is severable from the rest of the contract, and challenges to the validity of the contract as a whole, as opposed to the arbitration provision itself, must be arbitrated in the first instance. Notwithstanding this decision, in *Cardegna v. Buckeye Check Cashing, Inc.* (Fla. 2005) 894 So.2d 860, 864–865, the Florida Supreme Court held that, where the party resisting arbitration alleges that the entire contract is illegal and thus unenforceable as a matter of state public policy, a Florida court, and not an arbitrator, must first determine the contract's legality. In *Buckeye, supra*, 546 U.S. at page 446, the high court reversed the Florida court's decision, explaining that, under the FAA, Florida's public policy of refusing to enforce an arbitration provision in an illegal contract is "irrelevant." The court explained: "[I]n *Southland*, . . . [w]e . . . rejected the proposition that the enforceability of [an] arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action. [Citation.] So also here, we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on 'Florida public policy and contract law' [citation]." (*Buckeye, supra*, 546 U.S. at p. 446.) Under *Buckeye*, the majority's conclusion that Moreno's predispute waiver of his right to request a Berman hearing violates state public policy is simply "irrelevant," and its view that the arbitration provision's enforceability "should turn on '[California] public policy and contract law' " is erroneous as a matter of federal law. (*Buckeye, supra*, 546 U.S. at p. 446.) As *Buckeye* firmly establishes, contrary to the majority's view, the FAA does not permit either the Legislature or a majority of this court to refuse to enforce an arbitration agreement based on its "judgment concerning the forum for enforcement of the state-law cause of action" for vacation pay.[6] (*Buckeye, supra*, at p. 446.)

---

[6] In this regard, *Buckeye* also establishes that this court's earlier decisions in *Broughton* and *Cruz* are incorrect insofar as they hold that, notwithstanding the FAA, California may prohibit arbitration of claims for injunctive relief under the CLRA, the UCL, and for false advertising,

Despite these decisions, the majority declares that it does not "understand the FAA to preempt a state's authority to impose various preliminary proceedings that delay both the adjudication and the arbitration of a cause of action in order to pursue important state interests." (Maj. opn., *ante*, at p. 693.) According to the majority, the high court has never suggested that the FAA preempts state laws requiring that preliminary administrative steps like the filing of an administrative complaint be pursued before the filing of a civil action. (Maj. opn., *ante*, at p. 693.) "So, too," the majority continues, consistent with the FAA, "a state Legislature may, as it has done with the Berman hearings, advance a certain public policy by offering certain classes of litigants the [unwaivable] option of an informal, nonbinding administrative hearing serving as a gateway to obtaining special protections that enable the vindication of their claims." (Maj. opn., *ante*, at p. 694.)

Again, *Preston* conclusively refutes the majority's understanding of the FAA. There, in holding that the FAA preempts the TAA, the high court distinguished between an agency acting in the role of "adjudicator" and an agency acting in the role of "prosecutor, pursuing an enforcement action in its own name or reviewing a . . . charge to determine whether to initiate judicial proceedings." (*Preston, supra*, 552 U.S. at p. 359.) In proceedings under the TAA, the court explained, "the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as impartial arbiter." Because "[t]hat role is just what the FAA-governed agreement between [the parties] reserves for the arbitrator," the court explained, the TAA is incompatible with the FAA. (*Preston*, at p. 359.) Similarly, in a Berman hearing, the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as impartial arbiter. And because that role is just what the FAA-governed agreement between Moreno and Sonic reserves for the arbitrator, the Berman statutes, as interpreted by the majority, are incompatible with the FAA. Thus, the FAA preempts the Berman statutes insofar as the majority construes them, as a matter of public policy, to allow Moreno to pursue a Berman hearing notwithstanding his agreement to forego that option and arbitrate his claim for vacation pay.[7]

---

because of injunctive relief's public purpose and the institutional shortcomings of arbitration as a forum for dealing with public injunctions. (See *Cruz, supra*, 30 Cal.4th at pp. 323–341 (conc. & dis. opn. of Chin, J.); *Broughton, supra*, 21 Cal.4th at pp. 1089–1094 (conc. & dis. opn. of Chin, J.).)

[7] The majority asserts that the FAA does not preempt the Berman statutes insofar as they prohibit "Berman waivers" because that prohibition "does not discriminate against arbitration agreements" and applies "equally" to waivers that "appear[] . . . independent of arbitration." (Maj. opn., *ante*, at pp. 688–689.)

However, as the Illinois Supreme Court recently explained, the California statute the high court found preempted in *Preston* "did not single out or target arbitration agreements

## IV. The Arbitration Provision Is Not Unconscionable.

The majority alternatively holds that the arbitration provision is unconscionable insofar as it precludes Moreno from requesting a Berman hearing before submitting his claim to arbitration. For both procedural and substantive reasons, I do not join this holding.

Procedurally, we should not reach the issue. In *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681 [108 Cal.Rptr.3d 171, 229 P.3d 83], we recently held that the plaintiff, who was resisting a petition to compel arbitration, had "forfeited" his claim of unconscionability by failing to "raise the issue." Here, after inserting a boilerplate allegation of unconscionability as an affirmative defense in his response to Sonic's petition to compel arbitration, Moreno did nothing in the trial court to pursue that defense. In his briefs, he argued only that the arbitration provision violates public policy insofar as it burdens his ability to vindicate his right to vacation pay. Nor did he assert unconscionability in the Court of Appeal, in the petition for review he filed in this court, or in the opening and reply briefs he filed with us. It was not until well after briefing closed in this court, when we resurrected the issue by asking the parties to discuss it in supplemental briefs, that Moreno ever mentioned unconscionability again. On this record, and given that Moreno, as the party asserting unconscionability, bears the burden of proving unconscionability (*Engalla, supra*, 15 Cal.4th at p. 972; *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 [118 Cal.Rptr.2d 862]), Moreno has forfeited or abandoned the issue.

Alternatively, rather than decide the merits, we should remand the issue of unconscionability for consideration in the lower courts, as we did a similar claim in *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 509 [30 Cal.Rptr.3d 787, 115 P.3d 68]. There, after reversing a finding that an arbitration provision was unenforceable based on unwaivability, we declined to address an unconscionability claim, noting that "no court ha[d] yet addressed" the issue and stating: "Considerations of judicial economy make it appropriate to leave [this] question[] to the lower courts in the first instance. [Citation.]" (*Ibid.*) Consistent with our decision, several published decisions have since explained that, because a determination of unconscionability requires development of a factual record, an appellate court should not address an unconscionability claim that has not been litigated in the trial court. (*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1338–1339

explicitly," but "simply placed [primary] jurisdiction of labor disputes with an administrative agency [citations]." (*Carter, supra*, 927 N.E.2d at p. 1218.) *Preston* thus "make[s] clear that state statutes are preempted by the FAA if the statutes as applied preclude the enforcement of federally protected arbitration rights, regardless of whether the state statutes specifically target arbitration agreements." (*Carter*, at p. 1218.)

[48 Cal.Rptr.3d 749]; *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1293, fn. 7 [42 Cal.Rptr.3d 268].) Given these authorities and the record here, we should not reach the issue.

Substantively, the majority's analysis is unpersuasive. The majority finds that a predispute "Berman waiver" is "markedly one sided" because it "only benefit[s] the employer at the expense of the employee" and the majority finds itself unable to say that the benefits of arbitration "compensate[]" the employee for giving up the option of a Berman hearing. (Maj. opn., *ante*, at p. 686.) Thus, the majority declares, "the main purpose of *the Berman waiver* appears to be for employers to gain an advantage in the dispute resolution process by eliminating the statutory advantages accorded to employees designed to make that process fairer and more efficient." (*Ibid.*, italics added.) However, as previously noted, because of the de novo review process under the Berman statutes, a decision to waive the administrative option potentially saves the employee both time and money. The majority's analysis disregards these substantial benefits.[8]

Moreover, the focus of the majority's analysis is incorrectly narrow. Contrary to what the majority's discussion suggests, the agreement at issue here does not contain a "Berman waiver" per se. Rather, as noted above, it contains a broad, *bilateral* arbitration provision that applies, with certain exceptions, to " 'all disputes that may arise out of the employment context . . . that either [party] . . . may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum.' " (See, *ante*, at p. 696.) It is this broad, bilateral provision for arbitration that encompasses, among other things, what the majority calls "the Berman waiver." An assessment of substantive unconscionability should consider the purpose and benefits to the employee of this broad arbitration provision. Thus, the majority errs in focusing narrowly only on the purpose and benefits of the provision insofar as it constitutes a waiver of Berman procedures.

Viewed from a broader perspective, the arbitration provision is not unconscionable. As noted above, it requires *both* the employer and the employee to submit all of their claims against each other to binding arbitration, subject to

---

[8] The majority incorrectly assumes that, under its holding, an employee will necessarily have the choice, after a dispute arises, of going directly to arbitration or pursuing a Berman hearing first. (Maj. opn., *ante*, at p. 684, fn. 9.) In light of the majority's holding, parties in the future will likely exclude from predispute arbitration agreements claims that would be subject to the Berman statutes. Thus, after a dispute arises, an employee who has signed such an agreement will not be able to choose arbitration absent the employer's agreement. Indeed, in light of the majority's holding, it is not even clear in this case that either Moreno or Sonic may, without the other's agreement, insist on arbitration either before or after a Berman hearing. (Cf. *Gentry, supra*, 42 Cal.4th at p. 466 [if trial court invalidates class action waiver provision on public policy grounds, parties may waive arbitration provision and bring matter to court].)

a limited list of exceptions. Moreover, the claims excluded from the arbitration provision are largely claims that would be brought by an employee. In other words, as Sonic observes, "the arbitration agreement does not inequitably exempt the employer from arbitration of claims more likely to be brought by an employee." As also noted above, in the arbitration provision, the parties expressly acknowledged that their bilateral agreement to arbitrate *all* of their disputes, subject to enumerated exceptions, would provide "*mutual* benefits (such as reduced expense and increased efficiency)." (Italics added.) Neither Moreno nor the majority has established otherwise. Indeed, by holding that Sonic may pursue arbitration under the parties' agreement after a Berman hearing (maj. opn., *ante*, at pp. 674–676), the majority implicitly finds that the arbitration provision is not, viewed in its entirety, impermissibly one-sided. In short, I agree with Sonic that "[t]he so-called Berman [w]aiver only looks [one-sided] in a vacuum." Because neither Moreno, who bears the burden of proof on the issue, nor the majority has shown that the arbitration provision, viewed from the proper perspective, is unconscionable, I do not join the majority's holding.

## V. Conclusion.

The laws of both California and the United States require courts to enforce arbitration agreements according to their terms, absent a ground for revocation of any contract. Because no such ground exists in this case, the arbitration provision at issue is fully enforceable. The majority's contrary conclusion is inconsistent with federal and state law, and renders California's statutory scheme preempted by the FAA.

Of greater concern than the fate of the arbitration provision at issue in this case are the far-reaching implications of the majority's decision for arbitration in California. Under the majority's analysis, for an arbitration agreement to be valid and enforceable, it is no longer enough that arbitration allows full vindication of the substantive statutory right at issue. To invalidate an arbitration agreement, a court need only find some advantageous procedure that the Legislature has attached to a particular forum, and declare—without any indication from the Legislature—that waiver of that procedure is against public policy. Under the majority's analysis, for an arbitration agreement to be valid and enforceable, it also is no longer enough that an employer, like its employee, agrees to arbitrate *all* of its claims, and even provides for exceptions to arbitration that may be invoked only by the employee. To invalidate an arbitration agreement as impermissibly one-sided and unconscionable, a court, isolating one claim from the many the parties have agreed to arbitrate, need only declare itself unable to say that the benefits the employee gains from arbitration *of that isolated claim* compensate for what the employee loses. In these respects, the majority's decision substantially

undermines the public policy *as declared by the Legislature*, which strongly favors enforcement of arbitration agreements according to their terms and requires us to indulge every intendment to give effect to an arbitration provision. The majority's decision also improperly disregards the well-established principles that courts should not declare a contractual provision to be void as against public policy unless that conclusion is free from doubt and entirely plain, and the party resisting arbitration bears the burden of showing that the provision is against public policy or unconscionable. Finally, contrary to the high court's decisions, the majority's decision impermissibly allows states—or their courts—easily to circumvent the federal policy favoring enforcement of arbitration agreements according to their terms. For all of these reasons, I dissent.

Baxter, J., and Corrigan, J., concurred.